Sanitary Association, in Liquidation.

## No. 13,523.

NEW ORLEANS AUXILIARY SANITARY ASSOCIATION IN LIQUIDATION.

### SYLLABUS.

1. The creditors of a private corporation, established for a public purpose, are entitled to be paid from the proceeds of the property of the corporation, and the claim that such property cannot be seized or otherwise made available in satisfaction of debts due by the corporation, upon the ground that, being the property of a corporation established for a public purpose, it must be regarded as dedicated to public use and exempt from seizure, cannot be sustained.

2. Whether, in the particular case before the court, the title to the residuum of such property, after the payment of the debts of the corporation and the charges and expenses of liquidation, vests in the public or in the members of the corporation is not determined.

3. Upon the case presented, the putting of the corporation in liquidation and the selection of the liquidating commissioners by the members in general meeting convened were competent acts and were properly recognized and confirmed by the District Court.

APPEAL from the Civil District Court, Parish of Orleans— *Theard*, J.

*Henry J. Leovy* for New Orleans Auxiliary Sanitary Association, Plaintiff, Appellee.

*Samuel L. Gilmore,* City Attorney, and *Arthur McGuirk,* Assistant City Attorney, for City of New Orleans, Defendant, Appellant.

### STATEMENT OF THE CASE.

The opinion of the court was delivered by

MONROE, J. It appears from the record that the New Orleans Auxiliary Sanitary Association was incorporated in 1879, under a charter, the provisions of which, so far as it is necessary to quote them, read as follows, to-wit:

"Article 1. The purposes and object of this corporation are hereby declared and specified to be the execution of such measures as are or may be necessary for the preservation of life and the public health, and

to prevent the introduction and spread of disease; and to these ends to aid and assist the public authorities in carrying into effect all proper ordinances and laws relative to public health, and to adopt systematic measures for the collection and distribution of money or property derived from voluntary subscription, or otherwise, in such manner as will best tend to preserve life and property and to promote the prosperity and health of the city of New Orleans."

"Article 2. * * * said corporation shall have and enjoy succession and exist and continue for * * * twenty-five years * * * to receive, hold, acquire and dispose of, as well as let, lease, and hire any and all kinds of property," etc.

"Article 7. The members of this corporation, at any general meeting convened for such purpose, after twenty days' prior notice shall have first been given * * * shall have the power * * * to dissolve the association, with the assent of three-fourths of the members of the association, present at such meeting."

After its incorporation, the association appears to have been regularly organized, with the required officers, and to have entered upon its life of proposed usefulness. In 1880, the city of New Orleans adopted an ordinance (No. 6442 Administration Series) whereby it granted to said association the use of a certain portion of ground on the river front between Nuns and Celeste streets "with the right * * * to control and hold possession of the same for twenty-five years." This ordinance contains the further provision that, at the end of the twenty-five years, "or at any other period, that the land should revert to the city * * * the city shall pay to the association the value of the improvements, machinery, buildings, etc., that may then be upon said property; the value to be ascertained and fixed by the appraisement of two arbitrators, one to be appointed by the city authorities and the other by said association. And in case of failure of these two .appraisers to agree, they shall appoint an umpire, whose decision shall be final in fixing and determining the amount to be paid by said city to said association." In 1881, another ordinance (No. 6981 Administration Series) was adopted, granting the use of a portion of ground, bounded by Toulouse, Jefferson and Clay streets, with the same conditions as to reversion. And, in July, 1891, Ordinance 5400, Council Series, was adopted, amending the two ordinances above mentioned by extending the period of the grants therein contained so as to make them run for twenty-five years from the date of such amendment. The evidence

shows that the association expended over sixty thousand dollars in establishing baths, pumps, buildings, tanks, pipes, etc., and maintained the same as public benefactions, at its own expense, for many years. Finally, however, in 1895, at a general meeting of the members, resolutions were adopted, reading, in part, as follows, to-wit:

"Whereas this general meeting * * * is duly convened after public notice * * * for the purpose of considering * * * the dissolution of the association, in the manner required by the law of Louisiana, and especially Section 687 of the Revised Statutes, and by Article 7 of the charter, and to appoint commissioners to liquidate its affairs; and

"Whereas, this association has for many years been supported by the contributions of its members and by voluntary aid from other citizens; and whereas in consequence of the recent stringency in business, its resources have almost entirely failed, and it is without means to longer accomplish any of the purposes for which it was created, or to pay current expenses and the salaries of officers and the wages of employees, and is now largely in debt without ready means to liquidate its indebtedness; and

"Whereas, if the affairs of this association be promptly and properly liquidated, a large sum will be realized from the city of New Orleans by surrendering to it the property now held by this association and collecting from the city the value of the improvements made by this association, as provided by Ordinance No. 6442, Administration Series, adopted April 20, 1880; Ordinance No. 6881, Administration Series, adopted April 12, 1881; and Ordinance No. 5400, Council Series, adopted in 1891;

"Be it resolved, That Henry Ginder, Edwin Belknap and Nicholas Bowling * * * be and they are hereby appointed commissioners to liquidate the affairs of this corporation, and that each be required to give security in the sum of five hundred dollars for the faithful performance of their duty, and that they be authorized to take all necessary steps to transfer to the city the property now held by this corporation on the conditions named in the above recited ordinances, and to do all other things necessary to fully liquidate the business of this corporation. * * * That the proceedings of the meeting of this association, held on the 7th of August, 1895, in which it was determined to surrender to the city the property held by this corporation, on payment

of the value of the improvements, be and the same are hereby approved and ratified, and that the petition to the city, prepared for the purpose, * * * be presented at once * * * for the action of the Mayor and the City Council."

It was then moved that the association be dissolved and that the meeting adjourn *sine die,* and the motion was carried.

Following this, upon October 22, 1895, the commissioners named presented a petition to the Civil District Court reciting the action which had been taken, annexing a copy of the minutes showing the same, and praying for recognition as liquidating commissioners, and for an inventory, etc.; and, the necessary order being made, they gave bonds, took the oath required, and received letters as such commissioners. Thereafter, said commissioners took possession of the property of the association and, having placed keepers in charge, undertook to bring about a settlement of the questions which the situation presented as between the association, in liquidation, and the city of New Orleans. With this object in view, they had several meetings with the Finance Committee of the Council and with the Mayor, at which they laid before those officers the condition and debts of the association, but with no definite result. The matter remained in that condition until 1897, when, during, or in anticipation of, an outbreak of yellow fever, the commissioners took the responsibility, upon the advice of their counsel, of loaning the pumping plant to the city in order that, by flushing the gutters with water, the sanitary condition might be improved, and the possession thus acquired by the city seems to have been thereafter retained. Having, as we understand the record, been unable to find any other solution of the problem with which they were called on to deal, the commissioners, in May, 1898, took a rule on the city in which they allege, in substance, that bills against the association, to the amount of over seven thousand dollars, have been presented to them for payment, but that they are without funds to pay them or to pay for the insurance of the property, or the costs of their administration; that, upon the faith of the contracts embodied in the ordinances which have been already set forth, the association expended large sums in erecting buildings and improvements, etc., which, under existing circumstances, the city is bound to pay for at an appraisement to be made as provided by said ordinances, but that the city refuses to appoint an appraiser or to take any action in the matter notwithstand-

ing repeated demands to that effect, and they pray that the Mayor be ordered to show cause why he should not appoint an arbitrator, or, otherwise, why the property in question should not be sold at auction. To this rule the city answers:

1. That the association is not in liquidation, but is dissolved.

2. That the order appointing the liquidating commissioners is *ultra petitionem.*

3. That the petition does not allege that the association has any creditors, or that its affairs need administration.

4. That the creditors did not consent to the appointment of the liquidators.

5. That the city did not consent to such appointment.

6. That the association left no property to be administered.

7. That there was no suit pending against said association, or creditors asking for the appointment of liquidators.

The appearer alleges that it is interested in having such action taken, and, converting its answer into a rule, prays that the commissioners be ordered to show cause why their appointment should not be set aside and vacated.

The issues thus presented were tried together; the rules of both parties were dismissed, and it was ordered and adjudged "that the city of New Orleans, for the use and benefit of its citizens, be recognized as owner and, as such, entitled to possession of the De Soto pump, the Thompson pump, the Morris baths, flushing pipes and other machinery and improvements erected and placed by the New Orleans Auxiliary Sanitary Association upon the said city's property, described in Ordinances Nos. 6442 and 6981 A. S. and in Ordinance No. 5400 C. S., subject, however, to the payment by said city of New Orleans of all debts incurred by the New Orleans Auxiliary Sanitary Association, in the acquisition, erection, maintenance, operation and preservation of said machinery, pipes and improvements, to the extent of the value thereof."

From this judgment the city appealed, and the commissioners have filed an answer to the appeal in which they pray that the judgment be amended by granting a *mandamus* to compel the Mayor to appoint an arbitrator, who, together with an arbitrator to be appointed by them, and an umpire, in case of disagreement (all as provided in the ordinances which we have set forth), shall fix the price to be paid by the

city of New Orleans for the property as described in the rule; otherwise that said property be sold at public auction.

### OPINION.

The counsel for the city argues that all of the property of the association, now before the court, having been bought and paid for by voluntary subscription of citizens, and having been acquired by a corporation established for a public purpose, must be held to be property dedicated to public use and not available to creditors of the association in satisfaction of the debts due them.

He, therefore, contends that the judgment appealed from, in so far as it decrees that said property is subject to such debts, should be reversed.

The proposition stated ignores the fact that, whilst the purpose for which the association was established was public, the association itself was a private corporation, capable, in law, of owning property, and incurring debts, in its corporate capacity. If, in such a case, there is any law by which property so owned is exempt from seizure for debts so incurred, our attention has not been called to it. It may be that, by reason of the declared purposes for which the association was established, the residuum of its property, after the payment of its debts and of the expenses of administration, will vest in the public rather than in the corporators, but that is a matter which need not be determined until the debts and expenses are paid and it is ascertained that such residuum exists. In the meanwhile, we are of opinion that, upon the case as presented, the recognition and appointment of the liquidating commissioners was authorized by law and precedent. T. O. Stark, Receiver, vs. Burk, Watt & Co. *et al.,* 5th Ann. 740; Follett vs. Field, 30 Ann. 161; In the matter of the Mechanics Society, 31 Ann. 627; In the matter of the Louisiana Savings Bank, 35th Ann. 196; State vs. Herdic Coach Co., 35th Ann. 245; Hancock vs. Holbrook *et als.,* 40 Ann. 53; Belton praying for Receiver, 47th Ann. 1614; *In re* Moss Cigar Co., Ltd., 50 Ann. 789.

Considering the answer to the appeal and the prayer of the commissioners for amendment of judgment, it is well settled that a *mandamus* will not lie to enforce the fulfillment of a mere contractual obligation. State *ex rel.* New Orleans vs. Railroad Co., 37 Ann. 589; Smart vs. Kansas City, Shreveport & Gulf R. R. Co., 51 Ann. 200. If,

however, the city continues to refuse to abide by the conditions of the ordinances referred to in the opinion, we know of no reason why the property of the association should not be sold at the instance of the commissioners for the purposes of the liquidation with which they are charged.

It is therefore ordered, adjudged and decreed, that the judgment appealed from, in so far as it decrees that the "city of New Orleans, for the use and benefit of its citizens, be recognized as owner, and, as such, entitled to possession of the De Soto pump, the Thompson pump, the Morris baths, flushing pipes and other machinery and improvements erected and placed by the New Orleans Auxiliary Sanitary Association upon the said city property," and in so far as it rejects the demand of the liquidating commissioners, appellees herein, for the sale of said property, be annulled, avoided and reversed, and it is now ordered, adjudged and decreed, that, unless the city of New Orleans shall, within thirty days from the date upon which this judgment shall become final, by pleading in the District Court, consent to abide by all the conditions of the Ordinances Nos. 6442 and 6981, Administration Series, with respect to the appointment of arbitrators, and the valuation and reversion of the property in controversy, then, and in that case, the said commissioners shall have leave to cause said property, or so much thereof as may be necessary for that purpose, to be sold in order to pay the debts due by the New Orleans Auxiliary Sanitary Association and the legitimate charges and expenses incident to, and arising out of, the liquidation and administration of its affairs; such sale or sales to be made at public auction or otherwise, as may be ordered by the judge *a quo* upon the application of said commissioners. It is further ordered, adjudged and decreed, that the question of the ownership and destination of the residuum of property or money, if any there shall be, in the possession of said commissioners, after the payment of the debts, charges and expenses above mentioned, is expressly reserved. It is further ordered, adjudged and decreed, that the judgment appealed from be, in all other respects, affirmed, and that the city of New Orleans pay the costs in both courts.