(48 South. 649.)

No. 17,380.

DREIFUS v. COLONIAL BANK & TRUST CO.

(Jan. 18, 1909. On Rehearing, March 1, 1909.)

1. CORPORATIONS (§ 201*)—STOCKHOLDERS— MANAGEMENT OF CORPORATE AFFAIRS—INTERFERENCE BY COURT.

In a contest among shareholders of a corporation over the management of its affairs, the corporate charter is the law under which they must proceed, and the majority must control, and such control will not be interfered with by the courts, unless the majority does something it has no right to do.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 765, 766, 774, 775; Dec. Dig. § 201.*]

2. BANKS AND BANKING (§ 71*)—INSOLVENCY —RIGHT TO APPOINT LIQUIDATORS.

Where the charter of a bank gives the right to the shareholders to control the liquidation of the bank, the officers of the bank, including the board of directors, are without authority to surrender such right, and a request by the shareholders, made to the court, to confirm their action in appointing liquidators, is not a renunciation of their right to select liquidators, but is an affirmance of it.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 143; Dec. Dig. § 71.*]

3. BANKS AND BANKING (§ 71*) — DISSOLUTION—ELECTION OF LIQUIDATORS.

Rev. St. § 687, provides that stockholders at a general meeting convened for that purpose may dissolve the corporation with the assent of three-fourths of the stock represented at such meeting. The articles of incorporation of a bank provided that "said association may be dissolved with the assent of two-thirds of the capital stock represented at a general meeting of the stockholders convened for that purpose." Held, that the election of liquidators of a bank by all the stockholders present at a stockholders' meeting is not invalid, because the election was not supported by three-fourths of the entire stock.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 143; Dec. Dig. § 71.*]

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

In the matter of the liquidation of the Colonial Bank & Trust Company. Application of Meyer S. Dreifus to have receivers appointed for such company. From an order appointing two receivers, defendant and the liquidators appeal. Reversed.

Meyer Samuel Dreifus, in pro. per. Henry L. Favrot and Dart & Kernan, for appellants Colonial Bank & Trust Co., and others. Dart & Kernan, for appellant German-American Savings Bank & Trust Co. Titche & Rogers and Lazarus, Michel & Lazarus, for appellees.

PROVOSTY, J. The defendant bank was organized in December, 1905, with a paid-up capital of $240,000, divided into 24,000 shares. It went safely through the late financial crisis; but in the last days of September and first days of October, 1908, a sort of silent run began upon it, caused by a suit for the appointment of a receiver instituted against another bank with which there had been a rumor of its intention to consolidate. This run was met at first in the ordinary course by the calling in of loans; but, the strain proving too great, the president of the bank had recourse to the German-American Savings Bank & Trust Company. An agreement was entered into by the two banks according to which the affairs of the embarrassed bank should be liquidated, and for that purpose the other bank should lend the money necessary to pay the deposits, and should act as liquidator, in consideration of a fee of $7,500. Formal resolutions were passed by the boards of directors of the institutions authorizing this contract to be entered into. This was on October 7, 1908.

In the case of the defendant bank the resolutions provided for the calling "of a meeting of the stockholders in accordance with the terms of the charter for November 12, 1908, between the hours of 12 m. and 3 o'clock p. m. for the purpose of

"First. Voting upon the affairs of the Colonial Bank & Trust Company, to liquidate.

"Second. Electing liquidators, in accordance with the terms of the charter.

"Third. For such other business as may come before the meeting."

One of the stipulations of the contract was that the loans to be made under it should be secured by the pledge of whatever part of the collaterals contained in the portfolio of the Colonial the German-American might select and require, and in addition by mortgage on the bank building of the Colonial.

The contract was signed on October 8th. The first loan under it was made on October 10th, and was for $6,000. Other loans followed as needed. As each new loan was made, the note executed for the preceding loan was taken up and a new note executed for the total debt. There had been loaned in this way $105,000, when, on November 5, 1908, information came to the officers of the Colonial Bank that two of the stockholders of the bank were about to apply to the courts for the appointment of a receiver. These stockholders had had an accountant go over the books of the bank. For this examination, we may mention, in passing, the defendant bank had afforded every facility to this accountant. To forestall this application for a receiver, the officers of the defendant bank had recourse to a friendly suit. They procured another stockholder to file a petition asking for the appointment of a liquidator, and, at the same time, filed an answer consenting to the appointment, and asking that the German-American Savings Bank & Trust Company be appointed; and the court made an order accordingly. This friendly suit was in pursuance of a resolution of the board of directors, declaring that they—

"recognize the necessity of the immediate liquidation of the affairs of this bank, and consent to the appointment of a liquidator, and ask that the German-American Savings Bank & Trust Company be appointed as liquidator."

On the same day, November 5th, the same two stockholders filed in the same suit a petition asking that the defendant bank show cause why a receiver should not be appointed.

The allegations of this hostile petition are, in substance, that the officers of the defendant bank are jeopardizing the rights of the stockholders and creditors of the bank by mismanaging its affairs and committing ultra vires acts, misusing and misapplying its funds, and that the purpose of the friendly suit is to secure the appointment of "a friendly and complacent liquidator, so as to stifle all investigation of the conduct of said bank and its officers," and that the appointment of said liquidator is null, because made without notice to the creditors, and before the suit had been allotted to the proper division of the court.

By way of specification of the charge of mismanagement and misapplication of funds, it is alleged that the officers and directors have combined and confederated to loan the entire funds of the bank to themselves and those allied to them in business or in family.

On November 11th, the same two stockholders applied for an injunction to prevent the meeting of stockholders from taking place; but the judge refused to grant same.

One of the said two stockholders owns 216, and the other 185 shares, out of the 24,000 shares of the stock of the bank. The remainder of the 24,000 shares is distributed among several hundred persons.

On the 12th the stockholders' meeting took place in due course, and by a vote of 13,765 to 0 the following resolution was adopted:

"Resolved, that the Colonial Bank & Trust Company be liquidated; that J. N. Roussel, John U. Adams, and A. J. Stallings be selected liquidators in accordance with article 9 of the charter; that their bond be fixed at $5,000 each; that the civil district court for this par-

ish be required to confirm the election of the above-named liquidators; and that the German-American Savings Bank & Trust Company be elected as trustee for the liquidators."

On the next day, the 13th, the three liquidators thus elected presented a petition in the same suit, reciting all that had taken place, and annexing the resolution of the meeting of stockholders, and alleging that in view of the litigation now pending they thought it advisable to submit the proceedings to the court and to ask to have their appointment recognized, and, if necessary, confirmed by proper action of the court. They alleged that they had agreed to serve without compensation, and would do so if confirmed, and were willing to recognize the agreements theretofore entered into with the German-American Savings Bank & Trust Company. The petition concluded with a prayer that the petitioners be—

"allowed to qualify and be sworn as liquidators of the said Colonial Bank & Trust Company in accordance with law and with the terms of their election as such, and that the court confirm them in the positions to which they were respectively elected as aforesaid, and receive their bonds and take all further steps necessary to protect them in the rights conferred upon them by the stockholders."

To the request of this petition the two hostile stockholders on November 16th filed an opposition. The grounds of this opposition are:

First. That the defendant bank—

"having submitted itself to the jurisdiction of the court by asking for a receiver to liquidate its affairs, has surrendered whatever rights it had under its charter to a liquidation independently of this court."

Second. That the action of the meeting of stockholders for liquidation, and appointing the three liquidators, is null, because not concurred in by two-thirds of the entire stock of the bank.

Fourth. That the object of said meeting was to secure the selection of receivers friendly to the officers whose actions and administration it is the purpose of the present proceeding to investigate, and that said meeting was so conducted as to carry out that object; it having been controlled by said officers.

The lower court set aside the order, made in limine, appointing the German-American Bank liquidator, and appointed two receivers. From this judgment a suspensive appeal was taken. During these judicial proceedings the liquidation of the bank has gone on.

The bank is solvent, and this is a contest between shareholders over the control of the liquidation of the bank. In a contest between the shareholders of a corporation over the management of its affairs, it is elementary that the charter, which is a contract between the shareholders, is the law of the case, and that the voice of the majority must prevail, and that the courts will not interfere in the family fight unless the majority are doing something they have no right to do. Trisconi v. Winship, 43 La. Ann. 49, 9 South. 29, 26 Am. St. Rep. 175. In Russell v. Ice Co., 118 La. 446, 43 South. 46, this court said:

"As against a stockholder, the majority of the stockholders have the absolute right to liquidate the affairs of the corporation in accordance with the charter."

In State v. Herdic Co., 35 La. Ann. 246, the evidence having shown that the corporation was solvent, this court said:

"Even if the charter of the corporation could have been properly forfeited for the special cause assigned, we see no reason why the liquidators appointed by the corporation should not be permitted to wind up its affairs."

In the instant case the majority of the stockholders have done absolutely nothing to oppress the minority, or that they did not have the perfect right to do under the charter. The only thing they have done has been to elect three liquidators to liquidate the affairs of the bank, all in exact and strict conformity with the charter. The

assumption that these liquidators will not do their duty is pure assumption. Nothing is said against their competency or fitness. They have not heretofore had any connection with the management of the affairs of the bank, though we do not know that it would necessarily make any difference if they had.

The contention that by submitting itself to the jurisdiction of the court the defendant bank has surrendered whatever right it had to a liquidation independently of the court is without merit. The officers of the bank, including the board of directors, were utterly without authority to surrender the right which the shareholders have under the charter to control the liquidation of the bank (La. Savings Bank Case, 35 La. Ann. 196); and the request which the shareholders have made to the court to confirm their action, far from being a renunciation of their right to select these liquidators, would seem to be, on the contrary, an affirmance of it. See, in that connection, Liquidation of Grant & Jung, 51 La. Ann. 1259, 1260, 26 South. 97; Sanitary Association in Liquidation, 105 La. 177, 29 South. 337, 83 Am. St. Rep. 230; Russell v. Ice Co., 118 La. 446, 43 South. 44.

The contention that the election of the three liquidators is null, because the vote required for a dissolution of the corporation and the appointment of liquidators is three-fourths of the entire stock, and not merely of the stock represented at the meeting, is in direct opposition to the charter (article 4) and to the statute (section 687, Rev. St.), which provide (quoting the statute) that:

"It shall be lawful for the stockholders, at a general meeting convened for that purpose, to dissolve the corporation with the assent of three-fourths of the stock represented at such meeting."

Three-fourths of the stock represented at the meeting means three-fourths of the stock represented at the meeting, and not three-fourths of the entire stock.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that there be judgment confirming as liquidators of the defendant bank the three persons elected to that office at the meeting of shareholders of November 12, 1908, and authorizing them to take charge of the affairs of the defendant bank after they shall have qualified by taking oath and giving bond as provided in said resolution, and condemning the opponents, Joseph Rittenberg and Alfred Hurwitz, in solido, to pay the costs of this proceeding, less the costs incurred before the filing of their first petition.

BREAUX, C. J., concurs in the decree.

## On Rehearing.

PER CURIAM. The opinion holds that the requisite majority for the voluntary dissolution of the corporation is three-fourths of the stock represented at the meeting of stockholders required to be called for the purpose of considering the question of dissolution. Counsel in their application for rehearing insist upon their contention that the requisite majority is three-fourths of the entire stock. The question depends upon the proper interpretation of section 687, Rev. St., and article 9 of the charter of the corporation. These read as follows:

"Sec. 687. It shall be lawful for the stockholders, at a general meeting convened for that purpose, to dissolve the corporation with the assent of three-fourths of the stock represented at such meeting."
"Art. 9. Said association may be dissolved with the assent of two-thirds of the capital stock, represented at a general meeting of the stockholders convened for that purpose."

It is seen that the interpretation adopted in the opinion accords with the plain reading of the text, namely, three-fourths of the stock represented at such meeting, not of

the entire stock. It also accords with the rationale of the matter. The idea is to let the question be determined by those who participate in the meeting, and not by those who stay away. This is a fundamental principle in the law of elections. Cyc. and A. & E. E. of Law, vol. "Elections." Under stress of this principle, this court has held that authority to a municipality to levy taxes "by a vote of the majority of the taxpayers" meant a majority of those voting at the election. Citizens v. Williams, 49 La. Ann. 422, 21, South. 647, 37 L. R. A. 761; Taxpayers v. Police Jury, 52 La. Ann. 456, 27 South. 102. Counsel's interpretation violates this principle, and would attribute the same potency to an uncast vote as to a vote actually cast.

Counsel say that the phrase "represented at such meeting" was added to section 687, and the word "represented," to article 9, for the purpose of imposing the requirement that those voting for the dissolution should be present or represented at the meeting. The answer is that, by requiring the voting to be at a meeting, the statute and the article, by necessary and clear implication, require that those voting should be present at the meeting (since none can vote at a meeting who are not present or represented at it); and hence an express injunction to that effect was wholly unnecessary, so much so, indeed, that to have added it would have been almost foolish, pretty much on a par with adding permission to go into the water after giving permission to go in swimming. This will clearly appear if we consider that, even if said phrase were out of article 9, a stockholder would as little think of voting for dissolution without being present or represented at the meeting as one would think of going in swimming without going into the water.

The meaning contended for by counsel would be much more nearly expressed if the said phrase in the one case, and the said word in the other, were stricken out. We should then have "two-thirds of the stock," instead of, as now, "two-thirds of the stock represented," etc. It can hardly be said, therefore, that said phrase and said word were added for bringing out the meaning contended for by counsel. They were added for expressing a meaning different from that which would have been expressed if they had not been added.

The great stress counsel now lay upon the punctuation of article 9—the comma between "stock" and "represented"—is an after thought. So little importance did they attach to this punctuation in the submission of the case that they did not call attention to it, and, indeed, printed article 9 in their brief without it. Their argument on punctuation is inapplicable to section 687, and, admittedly, if section 687 does not require two-thirds of the entire stock, neither does article 9.

One other contention of counsel in their application for a rehearing calls for attention. The opponents have been condemned to pay all costs accrued from and after the filing of their opposition. This was done on the theory that the necessary effect of the judgment is to reject their opposition, and throw upon them, as a consequence, the burden of all the costs it has occasioned. The decree is somewhat broader than this, and should be amended accordingly.

The judgment heretofore handed down is therefore amended, so that the costs which the opponents, Joseph Rittenberg and Alfred Hurwitz, are condemned to pay, are the costs of appeal and all those costs of the lower court which would not have been incurred if their opposition had not been filed. As thus amended, the said judgment is affirmed, and a rehearing is refused.