[76] Since the corporate affairs of the Canal Bank Trust Company are presently under the control of judicially appointed and confirmed liquidators who have furnished bonds, I agree that the appointment of a receiver, as plaintiff demands, is unnecessary.
[77] Also (but contrary to the holding of the majority), it is inappropriate and there is no need, in my opinion, to order the State Bank Commissioner to prepare and file a final account.
[78] The Bank Liquidation Statute, Act No. 300 of 1910, as amended, does not provide for his performing such a service. The Commissioner is a statutory officer, whose powers and duties are conferred and limited by the statute, and the obligations imposed on him respecting his discharge on winding up the affairs of a bank are only those recited in the statute's Section 10 which reads: "Whenever the State Examiner of State Banks shall have paid all necessary costs and expenses of the liquidation of a corporation and shall have paid to each and every depositor and creditor of such corporation (not including stockholders and their claims on account of stock owned by them) whose claims have been duly approved and allowed the full amount of such claims on their equitable and ratable proportion thereof and shall have made proper provision for all unclaimed and unnoticed balances on deposit as provided for herein, he shall call a meeting of the stockholders by giving notice thereof by advertisement, published at least once a week during thirty days, in one or more newspapers regularly issued in the Parish wherein the corporation is domiciled. At such meeting the State Examiner of State Banks shall appear and deliver to the stockholders all of the remaining property, effects, books and records of such corporation. Upon such transfer and delivery the State Examiner of State Banks shall be discharged from further liability to such corporation and its creditors. Provided, that the State Examiner of State Banks and his bondsman shall be responsible for damages to any person, firm or corporation aggrieved, for all damages that may be suffered by reason of any action by the said Examiner, acting under authority of this Act, whenever such action shall have been resorted to without reasonable or probable cause."
[79] The reason for the statute's omitting to provide for the Commissioner's filing of a final account is obvious. The final account, if it were required, could be only for the benefit and protection of creditors (including depositors and those claiming fees and costs incidental to the liquidation, but excluding stockholders). Instead of requiring its filing the quoted Section 10 specifically recites that the claims of creditors, following their approval and allowance, are to be paid (or payment otherwise provided for as stipulated) before the Commissioner delivers to the owners (stockholders) the remaining corporate property and effects. If not thus paid he and his bondsmen are responsible therefor.
[80] In this case it appears that the requirements of Section 10 have been fully met, except in two particulars, namely (1) Some of the fees attending the liquidation were not judicially fixed, and (2). The unclaimed and unnoticed balances on deposit were placed with the National Bank of Commerce instead of being turned over to the state treasurer, see Section 4 of Act No. 300 of 1910, as amended by Act No. 54 of 1944. However, as to these two exceptions, it is not shown or contended that the rights of anyone have been jeopardized, not even those of the fee claimants or the owners of the unclaimed deposits. Moreover, the excepted two requirements may yet be fulfilled, without the necessity of the filing of a final account, through the simple expedient of rules initiated by any interested party (including the present State Bank Commissioner) in the pending proceedings in Division "A" of the Civil District Court for the Parish of Orleans.
[81] The fact that Mrs. Nellie P. Graham and three other minority stockholders petitioned the court (on appeal here,216 La. 410, 43 So.2d 777) to compel the State Bank Commissioner to file a final account is of no moment. The petition did not allege that the rights of those stockholders had been prejudiced in any manner or that mismanagement on the part of the Commissioner existed. And for lack of these or similar allegations the petition was prematurely filed, as the district court held, if not also defective in failing to state a cause of action.
[82] Inapplicable are the several decisions cited in the majority opinion in support of the holding that the filing of a final account is necessary. None presented that proposition as an issue. Furthermore, all, as I appreciate them, involved contests respecting claims of creditors (depositors and fee claimants); no contest of that nature exists here.
[83] HAWTHORNE, Justice (concurring in part and dissenting in part).
[84] I concur in that portion of the decree which provides for the deposit of the unclaimed and unnoticed balances on deposit for the credit and benefit of particular individuals or creditors with the treasurer of the State of Louisiana, as required by Act No. 54 of 1944.
[85] I also concur in the decree insofar as it orders the bank commissioner to fix the fees of the attorneys, liquidators, special agents, and clerical assistants for services rendered during the liquidation of the bank under the bank commissioner subject to the approval of the court, but only where such fees have not been so fixed and approved.
[86] I am of the opinion that the judgment of the district court placing the corporation in liquidation under the supervision of that court and appointing J. Edgar Monroe, George E. Burgess, and John F. Finke as judicial liquidators and fixing their bonds should be affirmed, for this judgment follows the charter of the institution, which is the contract between the shareholders and is the law of the case, and I dissent from the decree changing their title from that of liquidators to receivers. See Dreifus v. Colonial Bank Trust Co., 123 La. 61, 48 So. 649.
[87] I further dissent from that portion of the decree which orders the preparation and filing of a final account. In so ordering, the majority, in my opinion, is legislating under the guise of interpreting, for, as I read Act No. 300 of 1910, as amended, no such final account is contemplated or required, and I do not think that the Legislature intended the filing of a final account in a case such as the one which we have before us.
[88] McCALEB, Justice (dissenting).
[89] The effect of the majority ruling in this case is to amend the judgment of the trial court in four particulars — (1) it changes the title of the liquidators to that of receivers; (2) it orders the State Bank Commissioner to refix the fees of the attorneys, liquidators, special agents and clerical assistants, which had been fixed by his predecessor in office, subject to the approval of the division of the court which had control of the liquidation proceedings under the bank commissioner; (3) it orders the commissioner to file a final account of his predecessor's liquidation of the bank and (4) it orders that the receivers (or liquidators) deposit the unclaimed and unnoticed balances with the State Treasurer in accordance with Act No. 54
of 1944.
[90] The change of the liquidators' title to that of receivers is not legally sound in my opinion. These liquidators were elected, as such, in accordance with the provisions of the charter of the bank and their confirmation in the lower court is correct, being in conformity with the decision of this court in Dreifus v. Colonial Bank Trust Co. 123 La. 61, 48 So. 649, where practically the same situation existed. The case of Katten v. Merchants Planters Bank, 209 La. 128, 24 So.2d 287, relied on by the majority to sustain its ruling, is clearly distinguishable by reason of the fact that, there, it was held that the minority stockholders' application for a receiver was well founded inasmuch as the majority stockholders had undertaken to run the bank as a going concern, after its liquidation by the bank commissioner, instead of winding up its affairs by the appointment of liquidating commissioners in accordance with the provisions of its charter.
[91] The order of the majority that the bank commissioner refix the fees for the services of attorneys, special agents, etc., which have already been fixed by his predecessor in office, is erroneous in my opinion for a number of reasons. In the first place, I have great difficulty in discerning the interest of the bank commissioner in these proceedings forasmuch as all of the depositors and creditors have admittedly been paid and no other persons, stockholders or otherwise, have suggested that the failure of the bank commissioner's predecessor to have the fees fixed by him approved by the court has redounded to their detriment. It is axiomatic that an action can be brought only by one having a real and actual interest. Article 15 of the Code of Practice. And it does not furnish a satisfactory answer, in my view, for the Court to say that the bank commissioner must be recognized as having an interest because he is a public official and that public policy demands that he be permitted to complain inasmuch as a mandatory provision of Act No. 300 of 1910 has not been observed by his predecessor. On the contrary, the remedy for any alleged dereliction of the former bank commissioner is found in the statute itself — for it is provided in Section 10 of Act No. 300 of 1910 that he and his bondsman "shall be responsible for damages to any person, firm or corporation aggrieved, for all damages that may be suffered by reason of any action by the said examiner, acting under authority of this Act, whenever such action shall have been resorted to without reasonable or probable cause."
[92] But even if it be conceded that the majority is correct in ruling that the bank commissioner has an interest to pursue, I see no reason why he should be permitted to refix the fees already set by his predecessor in office. It appears to me that it would be wholly in keeping with public policy to have him submit the fees, as fixed by his predecessor, to Division "A" of the Civil District Court for approval. In other words, to do what his predecessor failed to do and of which he complains.
[93] I am also unable to perceive a valid basis for the court's order that the bank commissioner prepare and file a final account of the liquidation proceedings. Act No. 300 of 1910 does not provide for the filing of a final account and this, alone, is a complete answer to the contention that an accounting is due, despite the dicta depended upon by the majority to support the opinion. Furthermore, it takes only a casual study of Act No. 300
of 1910 to become convinced that the Legislature sought to place liquidation proceedings by the banking commissioner on a different plane from the usual judicial liquidations and receiverships; that these proceedings are sui generis and that the rules governing ordinary receiverships are not applicable. This was recognized by the court in Re Hibernia Bank Trust Co.,203 La. 195, 207, 13 So.2d 833, 837, when it said: "The bank commissioner is a statutory officer and not an officer of the court as are ordinary receivers. His powers and duties are conferred and limited by the statute."
[94] Finally, the failure of the bank commissioner's predecessor to turn over the uncalled for and unnoticed balances to the State Treasurer was evidently an oversight, as the liquidation proceedings were begun long before the original act was amended. If some injured person were complaining, there could be no objection to the order of the Court that the receivers turn over the money as provided by the 1944 act.
[95] I think that the judgment of the district court should be affirmed.