YOUNG, f. m. c., *v.* EGAN, et al.

A devise, in Alabama, of a slave to an executor, coupled with a trust to remove him with a view of emancipating him, will be regarded by the courts of this State as an absolute devise. The trust is not compulsory.

Mere words of recommendation or precatory words in a devise do not constitute a trust unless it be clear they were used in a peremptory sense.

**A**PPEAL from the Fourth District Court of New Orleans, *Reynolds,* J.

*Price,* for plaintiff:

The only point in this case appears to be that by the laws of the State of Alabama the testator could not thus emancipate his slave.

This question has been so ably argued and discussed in the case of *Ross et al.* v. *Vertner et al.,* in 5 Howard's Miss. Rep., 305, and in the case of *Atwood's Heirs* v. *Beck's Administrator,* 21 Ala. Rep., 590, that I will not trouble the court with multiplying authorities.

It is further objected that the devise to the executor vested in him the legal title to the slave, and he could execute the trust or not.

This objection is without weight when we consider the fact that the executor qualified and accepted the trust, and he was bound by the request contained in the will just as much as if the words used had been imperative. See 2d Story Eq. Juris., fifth ed, sec. 1068, and the authorities there referred to.

*Egan & Dupuy,* for defendant and appellant:

The principle is well settled that when the object of a devise is to be executed in a foreign country, it must not be against the public policy of the laws of the place where it is sought to be enforced, or the court will declare it void. 2 Story's Equity, 429; 6 Vesey, 567. So that I contend, to give the will force would be a violation of the policy of this State, as evidenced by the Act of the Legislature of 18th March, 1852, page 214, and also introduce into our jurisprudence a new title—a *fidei commissum.*

"Our statute does not expressly declare the policy of the State on the subject, but our Constitution is an exclusion of any other mode of emancipation than the Legislature has enacted, and operates with as much force as if express negative terms were embraced in the statute itself." There are many good reasons why slaves should not be emancipated by last will and testament. Under the existing laws of Alabama the character of the negro must be shown to be good. Yet if the owner be permitted to emancipate his slaves by will, there is nothing to prevent the most vicious negroes from being turned loose on society. Again, wills are made usually during the last illness of the testator, when influences are brought to bear on the mind calculated to cause a disposition of property that sober reason could not approve. The greater part of the wealth of Alabama consists in her agricultural products. Liberate her slaves, and you sap the foun-

Young
v.
Egan.

dation of her prosperity—her agriculture and her commerce would be gone. To prevent this, she has thrown every restriction around slavery, and left but one door open by which slaves can become free. This condition has not been complied with. If the boy is entitled to be decreed free, it is by virtue of a will executed in Alabama by one domiciled and subjected to her laws. If the clause directing *Stephen Charpentier* to free said boy is binding, it derives its force from the Act of the General Assembly of 1834. In the case of *Haywood* v. *McCraven's executors,* 2 North Carolina Repository, 557, it decides "that a devise to emancipate slaves, although in some instances to be sent out of the United States to a foreign country, is void." The court said that such a devise is repugnant to the positive provisions by statute which has pointed out but one method by which slaves can be emancipated. Such is the law of Alabama. Can the testator choose a different, or can the executor who represents the deceased another method of emancipation? An instrument of emancipation must conform to the laws of the country where the emancipator was domiciled at the time of his death, or it is void. 1 Randolph, 234, and a case in 6 Randolph, 563-4 shows that an attempt to emancipate slaves, contrary to the law in force at the time, is void, although a trust is created to support it. In the case of *Bynum* v. *Boswich,* 4 Desans, 266, the court decided that a bequest of slaves to a trustee, with directions to liberate them, was void, being in opposition to the provisions of an Act of South Carolina, which forbids emancipation in any other way than by deed executed in the lifetime of the master, a certain time before his death, in a prescribed form." It is an undoubted maxim of the law that a legacy must take effect at the death of the testator, or it is void. 3 Peters, 497, 498.

*Rozier,* for one, and *Moïse & W. M. Randolph,* for another warrantor.

Buchanan, J. The record of the probate of *F. Gay's* will was properly admitted in evidence. The Alabama Code which requires the depositions of the witnesses who prove the will to be signed by them, was not promulgated until after the probate of the will in question.

*Francis Gay,* a resident of the State of Alabama, made his will on the 22d November, 1850, which was probated on the 2d December, 1850, in the Probate Court of Mobile county, in said State, and which contained the following clause:

"I give and bequeath my negro slave, named *Albert,* to my friend *Stephen Charpentier,* (barber in Mobile,) for him, said *Stephen,* to hold in his own right. Hereby requesting him, said *Stephen,* however, as soon as he can with convenience, to have the said slave taken to some State or country, where slavery and involuntary servitude is not known, there to be and remain free and emancipated forever. And I do hereby will, give and bequeath unto my executor hereinafter named, the sum of one hundred dollars, for the purpose of having the said slave removed to a free country, and request him to apply the same accordingly." After some other legacies, the testator names the same *Stephen Charpentier* his universal heir and executor.

*Stephen Charpentier* sold the slave *Albert,* named in this will, to *McRae, Coffman, & Co.,* at New Orleans, on the 11th April, 1851; and he afterwards passed by several mesne conveyances, into the hands of the defendant *J. C. Egan,* whom he has sued in this action for his freedom, which he claims to be entitled to under the above clauses of the will of his former master *Gay;* and also for five hundred dollars damages for illegal detention.

The form and effect of written instruments are governed by the laws and usages of the places where they are made, unless they have been made in one country, with the intention of being carried into effect in another country. Civil Code, Article 10. The exception contained in this Article of the Code does not apply to the case at bar. The testator lived and died in Alabama. His will was intended to be carried into effect in Alabama, where his property was situated. The respective rights of *Charpentier* and of the plaintiff under this will, are to be governed by the laws of Alabama.

In that State, the emancipation of a slave by last will, is forbidden by law. *Trotten, adm'r.* v. *Blocker & Wife,* 6 Porter, 269. But a devise of a slave to an executor, coupled with a trust to convey him out of the State, with a view to his emancipation, has been held by the Supreme Court of Alabama, not to be illegal. *Atwood's heirs,* v. *Beck, adm'r.,* 21 Alabama Rep. new series.

The case last quoted, however, only went the length of declaring that the Courts of Alabama would not interfere, at the instance of the next of kin of the testator, to prevent the executor from executing such a trust. The language of the decision is as follows: "Conceding in this case, that there is no one who could compel the executor, or the administrator with the will annexed, to carry this trust into execution, and that he must be left to his own conscience, and to the obligation imposed by his official oath, yet as we have seen that the trust is not illegal, and the removal may lawfully be made by the representative of the deceased, it is clear the Court will not interfere to prevent the trustee from complying with and carrying out the lawful desires of the testator. Whether it is such a trust as the Court may compel the execution of, against the will of the trustee, is not now presented before us; it is sufficient that the trustee is willing and proposes to carry it into execution. It is he who interposes the trust, and asserts its validity; and it only remains for the Court to direct him to do what, by his answer, he avers his willingness to perform."

We think it may be fairly inferred from this language, that the trust to transport the slave out of the State for the purpose of his emancipation, was recog_nized by the Supreme Court of Alabama, as legal, only so far as it was not compulsory; and indeed, this conclusion seems to flow necessarily from the premises. The law of Alabama prohibits emancipation of a slave by last will. Therefore, a legacy of freedom to a slave, is null. But a testator bequeaths his slave to A., coupled with a condition or trust that A. shall remove the slave into a State where involuntary servitude is not recognized, there to be or remain free. The trust, if voluntarily executed, has nothing illegal in it; because a man may do what he pleases with his own; and if the devisee, who becomes the owner of the slave upon the death of the testator, choose to travel into another State of the Union, or into another hemisphere, with his slave, the courts will not prevent him from so doing. But if the devisee prefer, on the contrary, not to send or take his slave into a free State, but to retain him in the State of Alabama, or in any other slave-holding State, and to enjoy his services, or to convey him to another, the same reason should prevent the courts from interfering. To treat this trust as compulsory, would be, to enable a testator to do indirectly, and *in fraudem legis,* that which he could not have done directly. In Louisiana, the trust contained in the legacy of the plaintiff to *Charpentier,* would be considered as not written; and the bequest of the plaintiff to *Charpentier* "to hold in his own right," would alone stand. The bequest would be viewed as an absolute one, and unqualified of the right of ownership in the plaintiff. Such was the decision of this court, in the case of the *State of Louisiana* v. *McDonogh's* executors. And the principle was recognized as correct under the common law, no less than under the civil law, by the decision of the Supreme Court of the United States, in the same case, when the authorities were carefully and elaborately reviewed, in the opinion delivered by Mr. Justice Campbell.

Again, the words of the devise on which the plaintiff founds his claim to freedom, are precatory "*requesting* him, the said *Stephen,* as soon as he can with

53

YOUNG
*v.*
EGAN.

convenience, to have the said slave taken to some State or country," &c.   Now, Judge Story, in his commentaries on Equity Jurisprudence, paragraphs 1068 to 1070, after stating that Courts of Equity have gone great lengths in creating implied or constructive trusts from mere recommendatory or precatory words of the testator, expresses his doubt of the soundness of the principle of such latitude of construction; and declares that the tendency of the more modern authorities, is to give to the words of wills their natural and ordinary sense, unless it is clear that they are designed to be used in a peremptory sense.   He concludes that whenever (among other instances) the prior dispositions of the property import absolute and uncontrollable ownership, courts of equity will not create a trust from words of this character.   Such we take to be the case in the present instance.   The testator commences dy devising the ownership of the slave, *Albert*, absolutely to *Stephen Charpentier*; and concludes by *requesting Charpentier* to have the slave transferred into some other State or country where slavery is not recognized by law.   The devise is absolute, depending on no contingency.   The request is addressed to the discretion, or, to use words of the Supreme Court of Alabama, " to the conscience " of the devisee.   It is to be observed that in the case of *Atwood's heirs* v. *Beck*, the terms of the trusts were preremptory.   Lastly, supposing the words of request in this devise to have the effect of a command, they clearly did not import a command to give to the plaintiff his freedom within the limits of a slave holding State.   The policy of Alabama, as we gather from her legislation, is to prevent the multiplication of the class of free persons of color, by restricting the power of emancipation.   The testator, aware of this policy of his State, has endeavored to conform to it.   He did not contemplate that the plaintiff should have his freedom in Alabama, or in any other slave holding State.   It does not seem to be carrying out the intentions of this will, to set the plaintiff free in Louisiana, as the District Court has done by the decree appealed from.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed, and that there be judgment for defendant and warrantors, with costs in both Courts.