467 So.2d 555 (1985)
Ted F. DUNHAM, Jr.
v.
Katherine O. DUNHAM.
No. 84-CA-0237.
Court of Appeal of Louisiana, First Circuit.
February 15, 1985.
Dissenting Opinion February 22, 1985.
Rehearing Denied April 12, 1985.
Writs Denied May 31, 1985.
*557 David M. Ellison, Jr., John Dale Powers, Baton Rouge, for plaintiff-appellee Ted F. Dunham, Jr.
James S. Holliday, Jr., William C. Shockey, Baton Rouge, for defendant-appellant Katherine O. Dunham.
Jack Dampf, Baton Rouge, for intervenor: appellant Richard E. Dunham.
Before GROVER L. COVINGTON, C.J., and EDWARDS, SHORTESS, SAVOIE and JOHN S. COVINGTON, JJ.
EDWARDS, Judge.
Ted F. Dunham, Jr., sued Katherine O. Dunham, his stepmother, for specific performance of an oral agreement to transfer certain shares of stocks in two of three closely held family corporations. Richard Dunham, Ted's brother, intervened, alleging that certain stock transfer restrictions in the corporations' articles of incorporation and a voting trust agreement between Mrs. Dunham and himself prohibit the transfer. After a lengthy trial, the trial judge found in favor of plaintiff, granted specific performance, and dismissed the intervention suit. From that judgment, both defendant and intervenor appeal.
Since Ted F. Dunham, Sr.'s, death in 1974, the parties have been in constant and often bitter struggle, both in and out of court, for control of the assets of three family corporations which Ted F. Dunham, Sr., foundedWinn Rock, Inc., (Winn Rock) a company engaged in the mining of anhydrite rock; Anderson-Dunham, Inc., (Anderson-Dunham) engaged in the production of concrete pipe; and Bayou Rentals, Inc., (Bayou Rentals) a landholding company which leases land and equipment to Anderson-Dunham, its only customer. Of the 87.135 total outstanding shares of Winn Rock Ted and Richard Dunham each own *558 26 shares or 29.85%. Mrs. Dunham owns 35.135 shares of 40.30%. Of the 250 total outstanding shares of Bayou Rentals Ted and Richard Dunham each own 62 shares. The remaining 126 shares, of which Mrs. Dunham owns 63, are held by the Baton Rouge Bank and Trust Company, the dative executor. Of the 2106 in Anderson-Dunham, Mrs. Dunham owns 500. The remaining 1606 are likewise held by Baton Rouge Bank and Trust, pending administration of Ted F. Dunham Sr.'s, succession.
The articles of incorporation of Winn Rock contain a stock transfer restriction which gives the corporation a right of first refusal of any stock offered for sale by one or more of the stockholders. The articles of incorporation of Bayou Rentals give a similar right of first refusal to any stockholder of that corporation provided he can match the asking "price" of the selling stockholder.
The present suit, representing the parties' latest court battle, involves a disputed oral agreement in which Mrs. Dunham agreed to sell all of her Winn Rock stock to Ted Dunham, Jr., in exchange for all of Ted Dunham, Jr.'s, Bayou Rentals stock plus $600,000 in cash. The alleged agreement occurred on August 18, 1980, at Mrs. Dunham's home in Baton Rouge. Mrs. Dunham and her certified public accountant, Carl Bernhardt, had arranged a meeting with Ted Dunham, Jr., who was at that time president of Winn Rock, and Mark Harrison, Winn Rock's auditor until his removal in October, 1982, to discuss distributing spinoff royalties from the Bayou Rentals stock directly to the shareholders. After that discussion, the conversation turned to the disputed transfer.
All four who were present at the meeting testified at trial and agreed on the following terms of the agreement: Ted Dunham, Jr., was to pay Mrs. Dunham $600,000 in cash and transfer all of his Bayou Rentals stock to her in exchange for all of her Winn Rock stock. The transaction was to be consummated when certain succession litigation was over. (Ted and Richard Dunham had filed suit to remove Mrs. Dunham as executrix of Ted Dunham Sr.'s, succession, because of her decision to redeem 394 shares of Anderson-Dunham stock. That litigation was pending before the Louisiana Supreme Court at the time of the agreement. The final decision removing Mrs. Dunham as executrix was rendered October 8, 1981, in Succession of Dunham, 408 So.2d 888 (La.1981).) Ted Dunham, Jr., was also to transfer all of his mineral royalties from the Bayou Rentals stock to his three children from his first marriage.
Mr. Bernhardt and Mr. Harrison both added that Ted Dunham, Jr., and Mrs. Dunham discussed and agreed to call a meeting to amend the Winn Rock articles of incorporation to delete the stock transfer restrictions, which they could do as majority shareholders. Ted Dunham, Jr., further testified that the transfer was to occur at the close of the succession litigation regardless of the outcome. Mark Harrison corroborated his testimony. Mrs. Dunham, however, testified that consummation of the agreement was suspensively conditioned on her winning the succession suit, that is, on her remaining "in control" of Anderson-Dunham as executrix of Ted Dunham, Sr.'s, succession.
After evaluating all of the testimony, much of it in conflict, the trial court rendered judgment in favor of the plaintiff, finding specifically that "the transfer was to be effected when the litigation was over... `either way it came out' ..." He ordered Ted Dunham, Jr., to transfer all of his stock to Mrs. Dunham and to pay her $600,000 in cash, and ordered Mrs. Dunham to transfer all of her stock to Ted Dunham, Jr. He further ordered Ted Dunham, Jr., to transfer his mineral interest to his children. And finally, he ordered Mrs. Dunham and Ted Dunham, Jr., to "take the necessary steps to amend" the Winn Rock stock transfer restriction and to comply with the Bayou Rentals stock transfer restriction. He further held that Richard Dunham's alleged voting trust agreement had never been perfected, was therefore not effective, and dismissed Richard Dunham's intervention suit.

*559 FACTUAL ISSUES
Before proceeding to a discussion of the particular factual issues, defendant argues that our review is not limited to the manifest error standard under Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). She asserts that the holdings in Tom Slay, Inc. v. Continental Casualty Company, 321 So.2d 863 (La.App. 1st Cir.1975) and West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979), enable us to reverse the finding of fact without first establishing that the trier of fact was clearly wrong.
Tom Slay held that a trier of fact should accord greater weight to affirmative testimony than to negative testimony. However, as plaintiff correctly points out, the Tom Slay rule only applies when a witness' credibility is not at issue. West holds that a trier of fact may not reject uncontradicted testimony or greatly preponderant, objectively corroborated testimony unless the record indicates a sound reason for doing so. We think these holdings are consistent with Arceneaux. When credibility is not at issue, as in Tom Slay, giving greater weight to negative testimony would constitute clear error. Likewise, when a witness' testimony has not been contradicted or is substantially corroborated as in West, a rejection of that testimony is tantamount to an unreasonable evaluation of credibility, and thus clear error under Arceneaux.
In any event, we do not think Tom Slay and West apply in this case. The trial judge specifically based his findings on a credibility evaluation of the witnesses. He stated, "Specifically, this court must evaluate the testimony that has come to this court. Suffice it to say not everybody can be believed. The testimony is in conflict." His credibility evaluations are entitled to great weight on appeal, and will not be disturbed unless they are unreasonable. Despite her tedious and exhaustive review of the testimony in this case, the defendant has not shown us how those evaluations are unreasonable. This case amounts to nothing more than a swearing contest between plaintiff and defendant. We cannot say that the trial judge was unreasonable in choosing to believe the plaintiff's version of the agreement rather than the defendant's. We did not see or hear the witnesses testify at trial and therefore should not replace his evaluation with ours.
Defendant also contends that the trial judge made an unreasonable evaluation of Mark Harrison's testimony. The trial judge stated in his oral reasons that after considering all of the testimony, he felt that Harrison's testimony best indicated the meaning of the terms of the agreement. Defendant contends that the trial court's reliance on his testimony and his evaluation of Harrison's credibility is unreasonable because Harrison did not remember at trial that Bernhardt had been present at the meeting and because Harrison mistakenly thought that the meeting lasted two and one-half hours instead of one hour. These discrepancies in his testimony are minor and do not impeach his credibility. The defendant's argument on this point is totally without merit.
The defendant next contends that the plaintiff failed to prove his case under LSA-C.C. art. 2277. Article 2277 requires a party to prove any oral agreement involving movable property valued at $500 or above by at least one credible witness and other corroborating circumstances. Hurston v. Hurston, 417 So.2d 407 (La.App. 1st Cir.1982), allows a party to serve as his own credible witness and the testimony of a second witness to serve as "other corroborating circumstances." In this case, Ted Dunham, Jr., qualified as the one credible witness and Mark Harrison as the other corroborating circumstances. Therefore, plaintiff adequately proved his case under article 2277.

Meeting of the Minds
Defendant contends that the discrepancy between her testimony and that of Ted., Jr., demonstrates that there was *560 no "meeting of the minds," and accordingly no contract.[1]
The conflict in the testimony over the terms of the agreement arises solely from Mrs. Dunham's insistence that she conditioned the agreement on a successful resolution of the pending succession suit in order to "retain control" of the voting stock of Anderson-Dunham. In this way, she contends, with the acquisition of the plaintiff's Bayou Rentals stock, she could fulfill her deceased husband's wishes to keep the two "financially dependent" companies under "common control."
First of all, as the plaintiff correctly points out, Mrs. Dunham never had control of the Anderson-Dunham stock except as executrix of the succession. As executrix, she was obligated as a fiduciary to vote that stock in the best interest of the heirs and legatees, not her own. See LSA-C. C.P. art. 3191; Succession of Dunham, 408 So.2d 888, 889 (La.1981). She would also have been obligated to wind up the affairs of the succession and send the owners of the stock into possession "as soon as advisable." She could not therefore have "retained control" of Anderson-Dunham without running into a conflict of interest. Indeed, it was her conflict of interest in redeeming 394 shares of Anderson-Dunham that led to her removal as executrix in the first place.
Moreover, while it is advantageous financially for Anderson-Dunham to have Bayou Rentals in friendly hands, there is no evidence in the record that Bayou Rentals is financially dependent upon Anderson-Dunham. Furthermore, Mrs. Dunham's references to her deceased husband's wishes are hearsay statements which the trial judge was at liberty to give little or no weight.
In any event, both Ted Dunham, Jr., and Mark Harrison testified that the sale was to take place regardless of the outcome of the succession litigation. Contrary to defendant's argument in her brief, Carl Bernhardt did not corroborate Mrs. Dunham's testimony that the agreement was subject to the alleged suspensive condition. He stated that Mrs. Dunham's reason for waiting until the litigation was over was to keep from irritating Richard Dunham, who was at that time unaware of the proposed agreement.
We do not agree with the defendant that her testimony, conflicting as it does with the plaintiff's, is by itself proof that there was no meeting of the minds sufficient to form a valid contract. As stated above, except for her insistence that the agreement was conditioned on a successful resolution of the succession suit, she essentially agreed with all other terms of the agreement. We do not think, therefore, that the trial judge's finding on this point was clearly wrong. We conclude that the will of the parties concurred on all essential points of the contract. LSA-C.C. art. 1798. Accordingly, we reject defendant's allegation that there was no "meeting of the minds."

Error
Defendant argues that even if this court should find that she consented to the agreement, then her consent was vitiated by error, since it was her understanding that the agreement was conditioned on her emerging victorious in the succession suit.
Article 1823 of the Louisiana Civil Code provides:
Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself.
It is manifest that defendant made no error as to the nature or the object of the contract. Nowhere does she contend that *561 she was not aware that the agreement involves a transfer of corporate stock. See LSA-C.C. arts. 1841-1842. It is also manifest that defendant made no error concerning the person with whom she was contracting. See LSA-C.C. art. 1834. Thus, the alleged error of Mrs. Dunham can be classified only as error in the motive, according to the terminology of the Louisiana Civil Code.
The motive is that which determines the will of a party and constitutes the cause of the party's obligation. See LSA-C.C. arts. 1824 and 1798.[2] Under article 1825, an error in the motive must involve that motive which is the principal cause. That article provides:
The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made.
It follows that under Louisiana law, in order to invalidate a contract, an error in the motive must be on the principal motive or cause of the contract. An error that only involves a secondary or subsidiary motive is not sufficient ground to invalidate a contract. See Cryer v. M & M Mfg. Co., Inc., 273 So.2d 818 (La.1973); Accord Hall v. Arkansas-Louisiana Gas Co., 368 So.2d 984 (La.1979); George Engine Co. Inc. v. Southern Shipbuilding Corp., 376 So.2d 1040 (La.App. 1st Cir.1979), writ denied, 378 So.2d 435 (La.1979); Ouachita Equipment Rental Company, Inc. v. Trainer, 408 So.2d 930 (La.App. 2d Cir.1981); Ortega v. Lebert, 406 So.2d 253 (La.App. 3d Cir.1981).
Moreover, according to article 1826, "No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it." Thus, a party's unilateral error on the principal cause will not serve to invalidate an agreement unless the other party knew, or from the circumstances should have known, that it was the principal cause. See Marchand v. United Companies Mortgages and Investments of Hammond, Inc., 335 So.2d 795 (La.App. 1st Cir.1976); Harris v. Baham, 417 So.2d 1216 (La.App. 5th Cir.1982).
In the instant case defendant agreed to transfer her stock in Winn Rock in exchange for plaintiff's stock in Bayou Rentals and a cash consideration of $600,000.00. From the nature of the transaction, it is reasonable to conclude that defendant's principal cause for entering the transaction was to acquire stock in Bayou Rentals and a considerable sum in cash. We hold that this was, in fact, defendant's principal cause or motive for entering the agreement. It follows that even if she consented to the agreement under the mistaken assumption that she would prevail in the succession litigation, this motive would be a subsidiary or accessory one which would not serve to invalidate the agreement. Accordingly, the contract cannot be invalidated for error in the motive.

Failure of Cause
Defendant also contends that, since her consent to the stock transfer agreement was contingent upon her prevailing in the succession suit, her cause "failed" when she lost that suit, and, consequently, the contract must be rescinded on that basis.
Article 1898 of the Louisiana Civil Code provides:
Where the consideration or cause of the contract really exists at the time of making *562 it, but afterwards fails, it will not affect the contract, if all that was intended by the parties be carried into effect at the time. The destruction of property sold, after the sale is perfected, without the fault of the seller, is a case governed by this rule.
Article 1899 adds:
But, if the contract consists of several successive obligations to be performed at different times, and the equivalent is not given in advance for the whole, but is either expressly or impliedly promised to be given at future periods; then, if the cause of the contract, corresponding to either of the successive obligations, should fail, the obligation depending on it will cease also. Thus, in leases for years, the obligation to pay the yearly rent ceases, if the property which is leased should be destroyed.
We interpret these articles to mean that the cause may fail only when the obligation it supports calls for a future performance whose object does not come into existence, or when the obligation calls for successive acts of performance. In the present case we have a contract calling for a performance whose object was in existence at the time the contract was madea stock transfer agreement that contemplates no further acts of performance after the conclusion of the transfer. Moreover, we have held that defendant's cause for entering the agreement was the acquisition of stock and a cash payment. This cause has not failed. Accordingly, we hold that this contract cannot be rescinded for failure of cause.
Accordingly, we affirm the trial court's finding of a valid oral agreement to transfer stock.

LEGAL ISSUES

Parol Evidence
Defendant contends that the oral contract is invalid because the term transferring Ted's mineral interest to his children is a transfer of immovable property and a stipulation pour autrui, both of which have to be in writing to be enforceable.
Although we question whether a stipulation pour autrui has to be in writing to be enforceable,[3] we agree with the defendant that the oral agreement to transfer the mineral interest is unenforceable.
Mineral interests, such as royalties, are immovable property under LSA-C.C. art. 470, and every contract affecting immovable property must be in writing. LSA-C.C. art. 2275. This is a substantive requirement that cannot be abrogated or waived by the parties; Little v. Haik, 246 La. 121, 163 So.2d 558 (1964); Wade v. Joffrion, 387 So.2d 1265, 1266, n. 1 (La. App. 1st Cir.1980), and applies "not only in cases involving contracts which directly affect title to realty but also in others where the litigants merely [seek] to derive benefits growing out of verbal agreements relating to the sale of immovable property." Hayes v. Muller, 245 La. 356, 158 So.2d 191, 197 (1963) (on rehearing).
There is nothing in the record to substantiate plaintiff's contention that the transfer of his mineral interests to his children constituted a separate agreement from the stock transfer. Ted Dunham, Jr., in fact, insisted at the trial that it was a term of the agreement and the trial court so found. Since this term was unwritten, the trial court erred in ordering its enforcement.
However, the unenforceability of this term of the contract does not invalidate the rest of the agreement. Neither party considered the transfer of the mineral interest as the principal cause of the contract. Although he insisted that it was a term, Ted Dunham, Jr., stated that the principal cause of the contract was the transfer of the stock. Mrs. Dunham, in fact, did not consider the transfer of the mineral interest to be a part of the agreement at all. Her request that he transfer his mineral interest to his children was a suggestion only, in the nature of a "precatory *563 term." In Louisiana, it is well settled that precatory terms or recommendations in an instrument may be treated as not written. See Carrere v. City of New Orleans, 162 La. 981, 111 So. 393 (1927); Young v. Egan, 10 La.Ann. 415 (La.1855).
The principal cause and consideration of the agreement we have held was the transfer of the stock and the $600,000.00. Stocks are considered movable property under LSA-C.C. art. 473 and can be the subject of a verbal sale or exchange upon consent of the parties. See LSA-C.C. articles 2441 and 2661. Just as a contract cannot be invalidated for error in a subsidiary motive, since a true and sufficient consideration exists supporting the stock transfer in this case, the contract cannot be invalidated because of the unenforceability of the mineral transfer. Cf. LSA-C.C. art. 1900; See also Hall v. Arkansas-Louisiana Gas Company, 368 So.2d 984 (La. 1979). Accordingly, we need not consider whether the term, as a stipulation pour autrui, must be in writing.

Specific Performance
Defendant and intervenor both contend that the trial court erred in ordering specific performance because certain stock transfer restrictions in the articles of incorporation of Winn Rock and Bayou Rentals and an alleged voting trust agreement between Richard and Katherine Dunham makes specific performance impossible.
First, Article X of Winn Rock's articles of incorporation gives Winn Rock a right of first refusal to buy at book value, according to the last preceding quarterly financial statement, any stock a shareholder may wish to sell. The right or option must be exercised within 30 days of the offer. Otherwise, the right devolves upon any other shareholder provided they exercise the option in the next 15 days.
Carl Bernhardt and Mark Harrison testified that this stock transfer restriction was discussed at the August 18, 1980, meeting and that Ted Dunham, Jr., and Mrs. Dunham agreed to call a shareholders' meeting to amend the articles of incorporation of Winn Rock. As owners together of more than two-thirds of the outstanding voting shares of Winn Rock, they have the necessary voting power to amend the articles of incorporation under LSA-R.S. 12:31B. The trial court found that the parties agreed to amend the articles of incorporation in order to delete the transfer restrictions and ordered them to do so as part of the specific performance decree.
LSA-C.C. art. 1903 extends the obligation of contracts to everything that by law, equity or custom is considered as incidential to the particular contract or necessary to carry it into effect. This article sanctions the trial judge's order that the parties delete the transfer restrictions in Winn Rock's articles of incorporation pursuant to their agreement under the contract. Moreover, in Stough v. 501 Ranch, Inc., 421 So.2d 1154 (La.App.2nd Cir.1982), the second circuit held that majority shareholders can validly ratify a stock transfer agreement by amending and modifying transfer restrictions in the corporate charter.
Furthermore, specific performance is the preferred remedy for the breach of any obligation, whether it be an obligation to give, as in a sale or an exchange, or an obligation to do or not to do. Civil Code article 2462 expressly authorizes specific performance in contracts to sell. Civil Code articles 1926 through 1928 recognize specific performance as a general remedy in all obligations to do or not to do. A trial judge should withhold specific performance only in those cases where it is impossible, is greatly disproportionate in cost to the actual damage caused by the breach, is no longer in the creditor's interest, or will have a substantial negative effect on third party interests. J. Weingarten Inc. v. Northgate Mall, Inc., 404 So.2d 896, 901 (La.1981).
Under the Weingarten test, it is possible for the parties in this case, holding together more than two-thirds of the outstanding voting power in Winn Rock, to amend the articles of incorporation deleting those transfer restrictions. See LSA-R.S. 12:31 *564 B. Specific performance is still in Ted Dunham Jr.'s, interest and is not disproportionate in cost to the actual damages he may have suffered or will suffer if the obligation is not enforced. Nor will specific performance have any substantial negative effect on third parties' rights.
Richard Dunham contends that the agreement constitutes a breach of the majority shareholders' fiduciary duty to him, the minority shareholder, under Mansfield Hardwood Lumber Company v. Johnson, 268 F.2d 317 (5th Cir.1959), and N.A. Johansen v. Port Jewell, Inc., 351 So.2d 184 (4th Cir. La.App.1977). Johansen does not involve a breach of majority shareholders' fiduciary duty to minority shareholders and is therefore inapplicable to this case. Mansfield, while recognizing a majority's fiduciary duty to minority shareholders, does not otherwise allow a minority shareholder to veto a majority shareholder's right to vote his majority shares as he sees fit, even to the extent of changing the organic law of the corporation, nor does it recognize a right in the corporation to veto a stock transfer by its stockholders. Moreover, we have not been directed to any decisions, and we have not been able to find any, holding that a stock transfer agreement by shareholders, who are also officers and directors of a closely held corporation, which does not conform to certain stock transfer restrictions contained in the charter, constitutes a violation of fiduciary duties by the officers and directors. We are reluctant to find a violation of fiduciary duties by anyone without being referred to a particular legislative provision or judicial decision recognizing the fiduciary duty to exist. Therefore, specific performance does not intrude on Richard Dunham's minority rights in any substantial way.
Second, Article XV of Bayou Rentals' articles of incorporation gives a shareholder a right of first refusal of any stock offered for sale by any other stockholder, provided he can match the offered "price." Plaintiff argues that part of the "price" of his Bayou Rentals stock, in addition to the $600,000.00, is 35.135 shares of Winn Rock stock. Intervenor argues that "price" refers only to a sum of money. Otherwise, he contends, any shareholder could easily defeat the stock transfer restriction simply by naming as additional consideration any unique item which only the offeree possesses, such as a priceless work of art.
By its wording, Article XV applies to any stock "sold or otherwise disposed of," suggesting that other means of transfer beside sale are contemplated by the article, such as donations or exchanges. Since there is no price involved in a donation, we must conclude that a shareholder may donate his stock without complying with Article XV. However, if we accept intervenor's argument that "price" refers only to money, then we must also conclude that a stockholder may freely exchange his stock unfettered by the Article XV restriction, which seems to contradict Article XV's express wording.
The price of a sale consists of a sum of money. See LSA-C.C. art. 2464. But the price of an exchange is any other property except money. See LSA-C.C. art. 2660. Since the principal object of the agreement in this case is a transfer of stock with additional consideration of $600,000, it appears to contain elements of both an exchange and a sale. If article XV imposes a stock transfer restriction on both sales and exchanges, then the "price" referred to includes the exchanged property. Since Richard Dunham, the only other shareholder of Bayou Rentals, does not own 35.135 shares of Winn Rock stock, then compliance with the procedures outlined in Article XV will not render specific performance impossible in this case because intervenor cannot match the "price" of the offered stock.
Thus, however we interpret the "price" referred to in Article XV, that Article does not make specific performance impossible.
Finally, intervenor and defendant contend that a voting trust agreement between them makes specific performance impossible. To create a valid voting trust under LSA-R.S. 12:78, the parties must agree in writing to transfer their shares of *565 stock to any person or corporation having authority to act as a trustee, surrender and cancel their shares on the corporate records, have new shares issued in the name of the trustee, who in turn must issue to them voting trust certificates, and then record the transfer in the records of the corporation.
Although a written agreement was entered into between Richard and Katherine Dunham, in an instrument dated August 21, 1982, none of the other requirements of LSA-R.S. 12:78 were complied with. Their shares were never surrendered and cancelled, new certificates and voting trust certificates were never issued, and the transfer was never recorded on the corporate books. The voting trust agreement consequently never became effective. Therefore, the trial judge was correct in finding that the voting trust was invalid.
Furthermore, since the agreement was entered into after Mrs. Dunham had agreed to transfer her stock to Ted Dunham, Jr., it does not give Richard Dunham any contractual right to defeat Ted Dunham Jr.'s, claim for the ownership of the shares. Cf., Dunham v. Dunham, 336 So.2d 337, 341 (La.App. 1st Cir.1976). Articles 1901 and 1903 of the Civil Code prohibit Katherine from taking subsequent actions inconsistent with her obligations under the agreement she made with Ted in 1980. Her agreement with Richard Dunham therefore constitutes at best an active breach of her earlier agreement to transfer her shares.
Accordingly, the trial judge did not abuse his discretion in ordering specific performance in this case.

PEREMPTORY EXCEPTIONS
The last two issues for discussion are raised in two peremptory exceptions which the defendant and intervenor have filed with this court.
In the first exception, they contend that Article X of Winn Rock's articles of incorporation make Winn Rock an indispensable party to these proceedings. An indispensable party under article 641 of the Code of Civil Procedure is one whose interests in the subject matter are so interrelated and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless he is joined in the action. However, because an appellate court must remand the case for joinder of the indispensable party and retrial, the classification should be applied "only after facts clearly establish that no complete and equitable adjudication of the controversy can be made in his absence." State, Department of Highways v. Lamar Advertising Company of Louisiana, Inc., 279 So.2d 671, 675 (La. 1973).
Intervenor and defendant rely principally on the holding in Thomas v. Craig, 424 So.2d 1090 (La.App. 1st Cir.1982). In that case, certain members of the Fellowship Missionary Baptist Church of Denham Springs sued to have their church's articles of incorporation declared null and void. Because the adjudication involved "the very existence or nonexistence of the church as a Louisiana nonprofit corporation," this court held that the church was an indispensable party and remanded the case for joinder and retrial. Thomas v. Craig, 424 So.2d at 1092.
The present suit does not threaten the existence of Winn Rock nor does it attack the validity of Winn Rock's articles of incorporation. It involves only the enforcement of an agreement between two shareholders to exchange their stock, which includes an ancillary agreement to amend Winn Rock's articles of incorporation in order to remove a stock transfer restriction. Since Ted Dunham, Jr., and Mrs. Dunham have the right and the necessary voting power to amend Winn Rock's articles of incorporation, a complete and equitable resolution of their contractual dispute can be made without joining Winn Rock in these proceedings. Indeed, we agree with plaintiff that joinder of Winn Rock as an indispensable party to these proceedings would in effect give Winn Rock a veto power over the amendment process which it otherwise would not have. This exception is denied.
*566 In their second exception, intervenor and defendant contend that plaintiff's original petition, alleging an oral agreement for the transfer of stock, was "enlarged" under LSA-C.C.P. art. 1154 by proof at trial of a transfer of mineral royalties, which are immovable property, without proof of a written instrument. Since a cause of action for the enforcement of an agreement affecting immovable property requires the allegation of a written contract, he contends that plaintiff has failed to state a cause of action. Without deciding whether, under article 1154, a petition can be "enlarged" to defeat a cause of action, we simply note that the principal object of plaintiff's demand, both as alleged in his petition and proved at trial, is specific performance of an oral agreement to transfer shares of stock, which are movable property. The unwritten term of the agreement purporting to transfer the mineral interest does not destroy plaintiff's cause of action for the enforcement of this oral contract. This exception is also denied.
For the foregoing reasons, we reverse that part of the judgment ordering the transfer of the mineral interest. We affirm in all respects the remainder of the judgment ordering specific performance of the contract. Accordingly, we need not discuss the legality of the trial court's order reserving the right to take evidence on the issue of damages. Costs of these proceedings are assessed in equal portions against appellants-intervenor.
REVERSED IN PART, AFFIRMED IN PART.
SHORTESS and SAVOIE, JJ., dissent and will assign reasons.
SAVOIE, Judge, dissenting.
From the majority opinion, I respectfully dissent.
The corporations involved in this matter are indispensable parties to the action. The majority opinion seeks to differentiate between the holding in Thomas v. Craig, 424 So.2d 1090 (La.App. 1st Cir.1982), by saying that the present suit does not threaten the very existence of the corporation nor does it attack the validity of the articles of incorporation. Nothing could be further from the truth. The articles of incorporation contain preferential transfer rights for the corporations as well as specific procedures by which stocks would be transferred. All of these provisions were violated by both the plaintiff and the defendant in this matter. Neither plaintiff nor defendant can escape the provisions of the charter of the corporation by merely stating that they have a majority interest in the shares and that their actions might have been legally taken had they followed, initially, the express provisions of the charter.
The charter of a corporation is the supreme law, and provisions thereof cannot be set aside by board of directors. Dolhonde v. Tangipahoa Bank and Trust Company, 153 So. 71 (La.App. 1st Cir. 1934).
In a contest between the shareholders of a corporation over the management of its affairs, it is elementary that the charter, which is a contract between the shareholders, is the law of the case. Dreifus v. Colonial Bank & Trust Co., 123 La. 61, 48 So. 649 (1909). A restriction on the stock transfers in the charters of Winn Rock and Bayou Rentals provided that any shares offered for a price or consideration must be offered first to the corporation and then to the shareholders. As such, the shares offered by the defendant to the plaintiff are in contravention of the laws governing them, which laws were set out in the charter. A right arose in favor of the corporation itself to purchase these shares in preference to Ted and/or Katherine Dunham.
This is obvious when one reads the charter and the previous statements in the light of La.R.S. 12:91 which states that officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duty of their respective positions in good faith, and with that diligence, care, judgment, and skill which ordinarily prudent men would exercise under similar circumstances *567 and like positions. Both the plaintiff and defendant were officers and directors of Bayou Rentals. Plaintiff was an officer and director of Winn Rock, and defendant was the owner of 40% of the stock in Winn Rock.
Under Louisiana law, corporate officers and directors are obliged to disclose facts within their knowledge to shareholders and to deal with them in an atmosphere of trust and Junker v. Crory, 650 F.2d 1349 (5th Cir.1981). A director occupies a fiduciary relationship to the corporation and its stockholders. La.R.S. 12:91; Babineaux v. Judiciary Commission, 341 So.2d 396 (La. 1976).
Simply stated, plaintiff and defendant conspired to barter and trade between themselves the stock of these corporations. This was in direct violation of the laws governing their participation in these corporations. This agreement between plaintiff and defendant violated the rights of the fictitious persons of the corporation. As between themselves (Ted and Katherine), the court may have ordered damages to the offended party but the court, by ordering the enforcement of this illicit and illegal agreement against the persons of the corporations is in direct violation of the laws governing corporations in the State of Louisiana. The trial court, therefore, is guilty of compounding the wrong done to the corporations. This is especially true since the court refused to allow both of these indispensable parties to be a party to a lawsuit directly affecting their rights. The fact that Ted and Katherine Dunham may have acted in a different fashion or proceeded by a method allowed by the charter of Winn Rock and thus have achieved the same effect legally, does not change the fact that such was not done and such is not the case. The corporate charter and the laws of this state have been and are being violated by the court order itself.
Where the shareholders have agreed and the charter contained a restriction of the transfer of stock or provisions for the purchase of stock preferentially by the corporation or by the shareholders, the corporation and shareholders' rights are preemptive. Until such time as these provisions of the charter have been done away with by the shareholders in proper session, in accordance with the laws of the State of Louisiana, these restrictions remain the law between the parties.
Noe v. Roussel, 310 So.2d 806 (La.1975), reflects the obligations owed by a director to the corporation as well as the corporation's right to set aside a director's action; that it, the corporation, does not deem fair.
The prevailing rule in the United States is that a purchase of corporate property from the corporation by a corporate officer or director is not absolutely void but merely voidable. If the contract is not fair to the corporation, it has a just and legal right to set the sale aside. While the Courts have not meticulously defined what is "fair", they have closely scrutinized each transaction to determine its fairness to the corporation. Because of the fiduciary relationship between the corporation and director, the burden of proof is on the director to prove his good faith in entering into the transaction and also the inherent fairness from the viewpoint of the corporation.

* * * * * *

The rule in Louisiana, therefore, is that a corporation has a right of action to set aside a transfer of property from the corporation to one of its directors. The contract or transaction is not void but merely voidable at the option of the corporation. In such an action the director has the burden of proof of fairness to the corporation and that he was acting in good faith; in effect, he must prove that the transaction was one negotiated and entered into at arm's length. (Emphasis ours). Noe, at page 817-818.
Further, the right of the corporation to challenge the dealings is clear.

A director is a fiduciary.... Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director not only to prove *568 good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. (Citations omitted). The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain (footnote with citation omitted). If it does, equity will set it aside. (Emphasis ours). Noe, at p. 818, citing Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).
Further, Noe holds:
This means that the agent or fiduciary must handle the matter as though it were his own affair. It also means the agent or fiduciary may not take even the slightest advantage, but must zealously, diligently and honestly guard and champion the rights of his principal against all other persons whomsoever, and is bound not to act in antagonism, opposition or conflict with the interest of the principal to even the slightest extent. The reason for the rule is obvious. (Emphasis ours).
In the present case, the corporation was not a party to the lawsuit dealing with this transaction. Therefore, it was not given the right to take the appropriate steps to seek this fairness.
The trial court's judgment has invalidated the restrictive transfer provisions of the charters of Winn Rock and Bayou Rentals. These covenants were protective of the rights of the corporations themselves. The trial court's judgment then directly affects the corporations and, therefore, corporations must be joined. Thomas v. Craig, 424 So.2d at 1092.
For the above and foregoing reasons, I dissent.
SHORTESS, Judge, dissenting.
My review of this record convinces me that there was no "meeting of the minds" between Katherine O. Dunham and Ted F. Dunham, Jr. I realize, however, that my role is to review, and I cannot say that the trial court was clearly wrong in its findings of fact. It resolved the credibility issue adverse to Katherine Dunham and in so doing found that Ted, Jr., agreed to give to her $600,000.00, his Bayou Rentals stock and transfer his Bayou Rentals mineral interests to his children from his first marriage in return for all of her Winn Rock stock.
The majority agrees that these were the terms of the verbal agreement. It then states that "we agree with the defendant that the oral agreement to transfer the mineral interest is unenforceable." I also agree, and at this point judgment should have been rendered dismissing plaintiff's suit.
However, the majority reversed that part of the trial court opinion which ordered the transfer of the mineral interests stating that "[s]ince this term was unwritten, the trial court erred in ordering its enforcement."
The majority's rationale is that the transfer of the mineral interest was not the principal cause of the contract but concedes that Ted, Jr., insisted that it was a term. He testified:
Q "Now, what agreement, if any, did [y'all] reach as to the transfer by Mrs. Dunham of all of her Winn Rock stock for the transfer by you of all of your Bayou Rentals stock?
A I accepted her proposal and again, said let's do it.
Q Wait, now, let's see. What exactly was the proposal?
A I was to pay her $600,000.00 in cash. I was to give her my Bayou Rentals stock. I was to transfer my interest in the Bayou Rentals royalty to Marc, Teddie and Paul. That was it.
. . . . .
A Well, she said to me, she said, I want you to give your children by Billy Jean your royalty acres in this spin out, and I said all right. And then she says, and then I want $600,000.00 and your Bayou Rentals stock. And I knew of course that we already had an arrangement for five hundred, but it had been several years, and I wasn't going to *569 fuss with her over the hundred thousand dollars, because the company had made substantial improvements in that period of time.
Mark Harrison (of whom the trial court said: "This Court, in evaluating all of the evidence, would have to accept the position of Mr. Harrison") testified:
A Yes. At the conclusion, basic conclusion of the discussions that the minerals could be and would be disbursed in the form of dividends to the shareholders after appraisals were made, Mrs. Dunham, Katherine, at that time said, now Ted, I want you to do something that would be very favorable to me. Your children by your first marriage have been deprived in any trust. Now, you should take care of them. I would like to see to it that you disburse or give these minerals to these children. And he said, how do you account for that. And she said, well, when we swap our stock or sell our stock in Winn Rock and Bayou Rentals, I want this to be part of the deal, that you give these minerals to these children, and you shouldn't have any objections to that, because they are your children, and they have been deprived.
Q What if anything did she say about the sale or swap of stock, and what companies did she
A And thenExcuse me. At that time Ted said, what do you mean, Katherine. And she said, well, you know we have an agreement to swap our stock in Winn Rock and Bayou Rentals. I want youI have been thinking this over for a while. I want you to give me six hundred thousand dollars in cash. I want you to give me your Bayou Rentals stock, and I will give you my Winn Rock stock, and also, I want you to transfer these minerals to your children.
The majority attempts to make a distinction between a term of a contract and principal cause for a contract. I found nothing in the record where Ted, Jr., testified that the principal cause of the contract was the transfer of the stock. That may have been his motive, but to accomplish it he agreed to several things, including transfering his mineral interests. The "precatory term" rationale regarding Katherine Dunham's testimony, which was used by the majority to delete the mineral interests term from the contract, should not have even been considered because the trial court believed Mark Harrison and Ted, Jr.
If it was a term, as it certainly was found to be by the finder of fact, then Ted, Jr., was to do three things: (1) pay $600,000.00, (2) transfer his Baton Rouge stock, and (3) transfer his Baton Rouge mineral interests to his children by his first marriage. This was the consideration he was to pay for Katherine Dunham's Winn Rock stock. That portion of the consideration dealing with the mineral interests was unenforceable, so there was a failure of cause. LSA-C.C. art. 1893, et seq. I would reverse.
I respectfully dissent.
NOTES
[1] The Louisiana Civil Code makes no reference to a "meeting of the minds", but article 1798 contains a similar, though not identical expression. That article provides:

"As there must be two parties at least to every contract, so there must be something proposed by one and accepted and agreed to by another to form the matter of such contract; the will of both parties must unite on the same point."
[2] "The reality of the cause is a kind of precedent condition to the contract, without which the consent would not have been given, because the motive being that which determines the will, if there be no such cause where one was supposed to exist, or if it be falsely represented, there can be no valid consent." LSA-C.C. art. 1824.

"As there must be two parties at least to every contract, so there must be something proposed by one and accepted and agreed to by another to form the matter of such contract; the will of both parties must unite on the same point." LSA-C.C. art. 1798.
[3] There is an excellent discussion and rejection of the writing requirement for stipulation pour autrui in Chief Judge Covington's dissent in Berry v. Berry, 371 So.2d 1346, 1348 (La.App. 1st Cir.) (Covington, C.J., dissenting), writ denied, 373 So.2d 511 (La.1979).