DOMENGEAUX, Chief Judge.
George Crain, Jr., one of two shareholders in Crain and Dore’ Production Company, Inc., sued the other shareholder, Ned Dore’, alleging Dore’ breached an oral agreement to purchase Crain’s interest in the company for $25,000.00 and to transfer to Crain the company’s interest in one of its production properties.[1] The trial judge found the parties perfected an oral agreement and ordered specific performance, but denied Crain’s claim for damages. Both Crain and Dore’ appeal. We affirm the trial court’s denial of damages but reverse the order of specific performance, finding the contract is unenforceable because it contemplates the oral transfer of immovable property in violation of La.C.C. art. 1839.
FACTS
In 1983, Crain and Dore’ formed Crain and Dore’ Production Company, Inc. (C & D) for the purpose of buying and operating oil and gas producing properties in Louisiana and Mississippi. The corporation’s stock is held 50% by Crain and 50% by Dore’, with Dore’ serving as president, Crain as vice-president and Gene Veillon as secretary-treasurer. One of the production properties owned by C & D is known as the “Russell Well 2-D and Deshotel No. 2, SWD System” (the Russell well).
In January of 1986, Crain and Dore’ had a “falling out” which resulted in a deadlock between the two shareholders. Attempting to settle their differences, Crain and Dore’ asked a mutual friend, Keith Thibo-deaux, to serve as mediator. In March of 1986, the three men met at Thibodeaux’s office to discuss Dore’s purchase of Crain’s interest in C & D. Thibodeaux took handwritten notes of the discussion, intending to transcribe them and to submit them to the parties for their signature at a later date.
The terms of the buy-out discussed at the meeting included (1) the transfer of C & D’s interest in the Russell well to Crain, who would assume approximately $53,-000.00 in liabilities in connection with that site but would also be released from another $100,000.00 owed on the Russell property; (2) the release of Crain from purchase performance bonds executed in connection with other C & D properties; (3) Dore’s payment to Crain of 50% of C & D’s state and federal tax refunds; and (4) a cash payment from Dore’ to Crain of $25,000.00.
At the meeting, Crain presented to Dore’ a $25,000.00 check which allegedly represented C & D’s production run for February of 1986. At that time, the parties did not know the check contained a $9,000.00 overpayment. Shortly thereafter, when Dore’ learned of the error, he notified *557 Crain in writing that the terms of the buyout previously discussed were no longer acceptable.
At trial, Crain testified the parties reached an oral agreement at the March 1986 meeting. Thibodeaux corroborated his testimony, stating that any further writings would have only been required for the purpose of implementing the agreement that had already been reached. Dore’, on the other hand, testified the terms discussed were only “tentative,” and the parties would not be bound until he and Crain had signed a written contract.
The trial court found that Crain established by a preponderance of the evidence that the parties intended to be bound by an oral agreement and ordered specific performance as prayed for. After reviewing the record, we find no manifest error in the trial court’s factual findings. However, for the reasons discussed below, we find the trial court erred in ordering specific performance of an oral agreement to transfer immovable property, namely, C & D’s interest in the Russell well.
TRANSFER OF MINERAL INTERESTS
Parol evidence cannot be used to prove title to any mineral right nor to prove any claim for or interest in the revenues from a mineral right. Hayes v. Muller, 245 La. 356, 158 So.2d 191 (1963). Mineral interests are incorporeal immovables. La.C.C. art. 470; La.R.S. 31:18. A transfer of immovable property must be made by authentic act or by act under private signature. La.C.C. art. 1839.[2] This is a substantive requirement that cannot be abrogated or waived by the parties. Little v. Haik, 246 La. 121, 163 So.2d 558 (1964). The parol evidence rule applies “not only in cases involving contracts which directly affect title to realty but also in others where the litigants merely [seek] to derive benefits growing out of verbal agreements relating to the sale of immovable property.” Hayes, 158 So.2d at 198.
Appellee Crain concedes the above principles, but argues a written agreement is not required in this case because Dore’ recognized the transfer under oath, as provided for in article 1839. We disagree.
The record reveals Dore’ denied the alleged oral agreement in his pleadings, and at trial, he acknowledged only a “tentative agreement” that was not binding until reduced to writing.
As stated in Little v. Haik, supra:
The provisions of Article 2275 [now La. C.C. art. 1839] are unmistakably clear; they ban testimonial proof of all dispositions affecting real property, save in cases where the person holding the title confesses under oath to a verbal agreement to transfer the real estate or to grant an interest therein. And, when a party interrogated as to the existence of such a contract denies the contract has been made, as in this case, the other party or parties are bound by such denial and cannot contradict it by parol. (Citations omitted.) Under such circumstances, there is no warrant in law or in fact for a conclusion that failure to formally object to the offer of parol evidence either changes the nature of such proof or enhances its value so as to equate it to the standards prescribed by the Code.
163 So.2d 558, 562.
Crain next argues that either Thi-bodeaux’s handwritten notes or a letter by Dore’ dated April 3, 1986 will satisfy article 1839’s requirement of an act under private signature. Again, we must disagree. Thi-bodeaux’s notes were not written, nor were they signed, by either party to the agreement. After reading the notes, we cannot say they evidence an intent for Crain to obtain ownership of C & D’s interest in the Russell well. While Dore’s letter acknowledges some of the terms discussed by the parties and present in the handwritten *558 notes, it does not mention the transfer of the Russell well. We find neither writing sufficiently complies with article 1839. See Wilkins v. Hogan Drilling Co., Inc., 424 So.2d 420 (La.App. 2d Cir.1982).
Finally, Crain relies upon Dunham v. Dunham, 467 So.2d 555 (La.App. 1st Cir.1985), writs denied, 469 So.2d 989, 990 (La.1985) in arguing the unenforceability of the transfer of the Russell well should not invalidate the remainder of the agreement. In Dunham, the First Circuit ordered specific performance of a stock transfer agreement which also included an unenforceable term to transfer mineral interests. Considering the transfer of the mineral interests to be only a “precatory” term, the court simply deleted that portion of the agreement and enforced the remainder of the contract. The court found the transfer of the mineral interests, in that case to a third party, was not the principal cause of the contract and, in fact, was not even considered by the parties to be part of the agreement.
We find Dunham clearly distinguishable. Crain’s testimony in the instant case reveals that the transfer of the Russell well was a principal cause of the contract and substantially affected the other terms of the agreement.
Recounting the discussion at a prior meeting between the parties, Crain testified:
... and there was some discussions about dollars, and there was particular interest about the Russell well. I indicated to the fact that I had family that had a working interest in it; that I wanted to get ownership of that particular property so that when Mr. Dore’ and I severed relationships we were completely severed; that I wouldn’t have to be dealing with him, because I knew that my wife’s family would be looking at me to oversee or see what was going on with those properties. So I said it would be much better if we could sever all relationships between us, and that was the point why the Russell well was segregated out. (Emphasis added.)
Later, Crain additionally testified as to the March 1986 meeting:
Q: At that meeting did you discuss basically the same issues that had been discussed at the prior meeting?
A: That’s correct, but this time, I was willing to come down on the cash portion of the offer, and Mr. Dore’ was willing to resolve the problems with the Russell well.
After reviewing the above testimony, we cannot agree that the transfer of the Russell well was only “precatory,” i.e., in the nature of a suggestion or a recommendation. The transfer of the Russell well affected C & D’s value in both the amount of the cash payment of the buy-out and the obligations assumed by each party. Unlike the situation in Dunham, the objectives of the parties cannot be achieved by simply deleting this provision. We, therefore, find the entire oral agreement is unenforceable.
This holding also necessitates affirmation of the trial court’s denial of Crain’s claim for damages as the result of Dore’s failure to comply with the agreement.
For the above and foregoing reasons, the judgment of the trial court ordering specific performance is reversed. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed to George Crain, Jr.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.

. Crain and W.H.C. Lease Service, Inc. also filed a claim against Dore' and C & D for wrongful termination of a service contract. Although the trial court denied this claim, neither plaintiff has appealed this ruling.

. Art. 1839. Transfer of Immovable property
A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.
An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located.