580 So.2d 1037 (1991)
Huey P. MORRIS and Susie T. Morris Plaintiffs-Appellants,
v.
PEOPLE'S BANK & TRUST COMPANY OF NATCHITOCHES, Louisiana; People's Bancshares of Natchitoches, Inc.; Peter E. Cloutier, Jr.; Gary S. DeBlieux; Hertzog DeBlieux; Walter C. Jones; John A. Luster; G.F. Thomas, Jr.; Lovan B. Thomas; R. Stacy Williams; and Kenneth D. McCoy, Jr. Defendants and
Sam J. Friedman Defendant-Appellee.
No. 90-1239.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1991.
Rehearing Denied June 24, 1991.
*1038 Cooper & Pierson, Mary O. Pierson, Baton Rouge and Cleveland, Barrios, Kingsdorf & Casteix, Carl W. Cleveland, New Orleans, for plaintiffs/appellants.
McCoy & Hawthorne, Kenneth D. McCoy, Jr., Natchitoches, Willie D. Maynor, Baton Rouge, Watson, Murchison, Crews, Arthur & Corkern, Daniel T. Murchison, Natchitoches, Mayer Smith & Roberts, Caldwell Roberts, Hargrove, Guyton, Ramey & Barlow, Billy R. Pesnell, Shreveport, Luster, Conine & Brunson, John W. Luster, Natchitoches, and Cook, Yancey, King & Galloway, Herschel Richard, Jr., Shreveport, for defendants/appellee.
Before DOMENGEAUX, C.J., and GUIDRY and LABORDE, JJ.
DOMENGEAUX, Chief Judge.
This appeal involves a claim made by Huey P. Morris and his wife, Susie T. Morris, against Sam J. Friedman for breach of an oral contract to purchase securities. In the same suit, Morris asserted certain claims against People's Bank & Trust Company of Natchitoches, People's Bancshares of Natchitoches, Inc., and certain directors of both entities; those claims were appealed and are the subject of our docket number 89-1242, rendered this date and reported at 580 So.2d 1029 (La.App.3d Cir.1991), which decision contains a complete discussion of the facts pertinent to this litigation.
Essentially, Morris claimed the Bank, Bancshares, Friedman, and other directors are liable to him for the Bank's failure to honor its stock purchase obligation upon Morris' resignation as president and chief executive officer of the Bank. Independent of those claims is the allegation which is the issue of this appeal that Friedman orally agreed to purchase Morris' stock. The petition states:
18.
FIFTH CAUSE OF ACTIONBREACH OF ORAL AGREEMENTS TO BUY
In June of 1987, Friedman personally agreed to buy the stock owned by petitioner on or before July 23, 1987. Friedman has failed to fulfill his obligation pursuant to this agreement. In July of 1987, Friedman again agreed to buy the stock owned by petitioner on or before August 5, 1987. Friedman's obligation pursuant to this agreement has not been fulfilled.
The trial court overruled Friedman's exception of no cause of action on this claim, but granted summary judgment in Friedman's favor after reviewing deposition testimony and other evidence. The court relied on La.R.S. 10:8-319. We affirm, and adopt herein the reasons of the trial court on the applicability of Section 8-319.
"The statutory language which the mover relies upon is found in Title 10 of the Louisiana Revised Statutes and is a portion of the Uniform Commercial Code which *1039 was adopted by the State of Louisiana in 1978. ... The specific provisions of LSA-R.S. 10:8-319 are as follows:
§ 8-319. Statute of frauds
A contract for the sale of securities is not enforceable by way of action or defense unless
(a) There is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or
(b) Delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or
(c) Within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under Paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or
(d) The party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price.
"On its face, the motion seems well founded in the law because LSA-R.S. 10:8-319 clearly requires a writing meeting the requirements of section (a). Section (a) requires that there be a writing signed by the party against whom enforcement is sought, which writing must be sufficient to indicate that a contract has been made for the sale of a stated quantity of specific securities at a certain or ascertainable price. Despite the fact that the motion appears on its face to have a good legal basis, counsel for the plaintiffs, in well researched and written briefs and in a conference with the court and all counsel, have raised oppositions with sufficient merit to prevent the court from summarily granting this motion.
"Counsel and the court are all in agreement that there is no Louisiana law interpreting the provisions of LSA-R.S. 10:8-319, so the court, in keeping with the directive of the Louisiana Supreme Court in Cromwell v. Commerce and Energy Bank, 464 So.2d 721 (La.Sup.Ct.1985), has looked to the jurisprudence of other states and the Federal Court system for direction. The directive from the Louisiana Supreme Court is stated as follows:
The U.C.C. was adopted in Louisiana in an effort to harmonize the commercial law of Louisiana with that of the other states. We should, therefore, examine the jurisprudence of other states interpreting R.S. 10:5-114(2).
"With this in mind the court will look at the first basis for the opposition to the motion which is to the effect that the Statute of Frauds (LSA-R.S. 10:8-319) does not apply to private sales of securities or private agreements to sell securities. The court has found adequate direction on this issue in the jurisprudence of other states and the Federal system in interpreting section 8.319 of the Commercial Code (our LSA-R.S. 10:8-319). Typical language interpreting this section is found in Young vs. Simpson, which was decided in the Texarkana division of the United States District Court for the Eastern District of Texas and which is reported at 607 F.Supp. 67 (U.S.Dist.Ct.1985). The following language of Simpson is dispositive of this issue:
STATUTE OF FRAUDS
[1,2] Section 8.319 of the Texas Business and Commerce Code sets forth certain requirements regarding the enforceability of contracts for the sale of securities. The Code reads, in pertinent part:
A contract for the sale of securities is not enforceable by way of action or defense unless:
1. There is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker, sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price.

*1040 Tex.Bus. & Com.Code Ann. § 8.319 (Vernon Supp.1984). Stock of a closely held corporation comes within the term "securities" as set forth in 8.319 of the Code. Kenney v. Porter, 604 S.W.2d 297, 301 (Tex.Civ.App.Corpus Christi 1980, writ ref'd n.r.e.). Therefore, the alleged oral agreement to repurchase the stock in Hush Puppy of Little Rock, Inc. is subject to the Code's requirements. Since there is no writing signed by Simpson which evidences such alleged agreement, Dr. Young's claim is unenforceable even if there had been such an agreement. See Consolidated Petroleum Industries, Inc. v. Jacobs, 648 S.W.2d 363, 366 (Tex. App.Eastland, 1983, writ ref'd n.r.e.)
"To the same effect as Young v. Simpson are Roos v. Aloi, 127 Misc.2d 864, 487 N.Y.S.2d 637 (Supp.1985); Godwin v. Westberry, 231 Ga. 492, 202 S.E.2d 402 (Ga.1973); Murrey v. Specialty Underwriters, Inc. 233 Ga. 804, 213 S.E.2d 668 (1975); Thomas v. Prewitt, 355 So.2d 657 (Miss.1978).
"The next point of opposition raised by the plaintiff is to the effect that LSA-R.S. 10:8-319 does not apply to bank stock. That issue was squarely addressed by the Supreme Court of Kansas in Mildfelt v. Lair, 221 Kan. 557, 561 P.2d 805 (1977). That proceeding was almost identical to the proceeding which is before this court and is described in the syllabus of the case as follows:
Action was brought to recover damages for breach of oral contract, which provided for employment of plaintiff as bank president, * * * and for an option by plaintiff to buy bank stock * * *.
"The Mildfelt case, like the case at bar, was before the court on a motion for summary judgment. The court in Mildfelt applied K.S.A. 84-8-319 (our LSA-R.S. 10:8-319) as follows:
K.S.A. 84-8-319 is our present statute of frauds governing the sale of securities. It reads: "A contract for the sale of securities is not enforceable by way of action or defense unless (a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or
"(b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or
"(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or
"(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price."
None of the four conditions prescribed by K.S.A. 84 8:319 is present here. There is no writing signed by Lair, no delivery of the shares, no payment by Mildfelt, no written confirmation, and no admission of the option by Lair. Does this statute, then, bar plaintiff's claim? Under the facts and circumstances presented, we hold that it does.
We are dealing here with an option contract, an offer to sell a maximum number of shares at a fixed price per share, in connection with a contract of employment. While we are aware that some courts have held this section of the U.C.C. inapplicable to stock options granted to employees, we think the better rule is that set forth in Bingham v. Wells, Rich, Greene, Inc. 34 A.D.2d 924, 311 N.Y.S.2d 508 (1970), where the court held that a "... portion of the employment contract ... involving a transfer of title to shares of stock for a price is a sale of securities within the purview of the Uniform Commercial Code § 8-319 and is not enforceable unless `there is some writing signed by the party against whom enforcement is sought ...' (311 N.Y.S.2d pp. 508, 590.)

*1041 And see, also Scarpinato v. National Patent Development Corp. 75 Misc.2d 94, 347 N.Y.S.2d 623, 625 (Sup.Ct.1973). The other conditions fixed by the statute, i.e., delivery, payment confirmation without objection, or admission, would also make enforceable such a contract.
"The above language leaves no doubt that the Statute of Frauds applies to transactions involving bank stock.
"Likewise, by definition, bank stock would clearly fall within the definition of "security". The definition of security is set forth in LSA-R.S. 10:8-102 as follows:
(a) A "security" is an instrument which
(i) Is issued in bearer or registered form, and
(ii) Is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment, and
(iii) Is either one of a class or series or by its terms is divisible into a class or series of instruments, and
(iv) Evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer.
(b) A writing which is a security is governed by this Chapter, and not by R.S. 10:3-101 et seq., even though it also meets the requirements of that Chapter. This Chapter does not apply to money.
"The third ground raised by the plaintiff as an opposition to the motion for summary judgment is the one which gives the court the most difficulty. It is the contention of the plaintiff that LSA-R.S. 10:8-319 is not intended to repeal or otherwise restrict the provisions of the Louisiana Civil Code which provide that oral agreements to buy and sell corporeal and incorporeal movables are recognized in Louisiana (Louisiana Civil Code Articles 473, 1759, 2441, 2449, 2456, 2457 and 2463). In support of this opposition, the plaintiff cites Dunham v. Dunham, 467 So.2d 555 (La.App. 1st Cir.1985) writs denied May 31, 1985 at 469 So.2d 989 and 469 So.2d 990.[1] In that case the First Circuit Court of Appeal relying on Articles 473, 2441 and 2461 of the Louisiana Civil Code declared valid an oral agreement for the sale of securities. The pertinent language is as follows:
The principal cause and consideration of the agreement we have held was the transfer of the stock and the $600,000.00. Stocks are considered movable property under LSA-C.C. Art. 473 and can be the subject of a verbal sale or exchange upon consent of the parties. See: LSA-C.C. Art. 2441 and 2661.
"It would appear from this language that the First Circuit is declaring LSA-R.S. 10:8-319 to be unenforceable and of no effect. This court could accept that if the First Circuit had discussed the Statute of Frauds. The Statute of Frauds was adopted in 1978 and was clearly in the law of this state at the time the Dunham case was decided. However, LSA-R.S. 10:8-319 was never discussed in the Dunham decision. Since it was not discussed, this court does not believe the First Circuit intended to declare it unconstitutional, inapplicable or otherwise of no effect. The Statute of Frauds is normally pled as an affirmative defense or raised by motion for summary judgment, as will be discussed later herein, and since the First Circuit did not discuss the Statute of Frauds, this court must conclude that it was never raised as an affirmative defense or by motion for summary judgment.
"This court in an effort to reconcile the requirements of LSA-R.S. 10:8-319 with the Civil Code Articles which provide for the enforceability of an oral contract to sell corporeal movables will keep in mind the general rule that statutory provisions should be interpreted by courts in such a manner as to give effect to both laws when they appear to be in conflict. The court will likewise keep in mind the directive of Louisiana Civil Code Article 9 to the effect *1042 that when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. With this in mind, the court notes the provisions of Louisiana Civil Code Article 1832 which provides as follows:
When the law requires a contract to be in written form, the contract may not be proved by testimony or by presumption, unless the written instrument has been destroyed, lost, or stolen.
"The court finds that this provision reconciles any apparent conflicts in that oral agreements to sell corporeal or incorporeal movables are enforceable except in cases where other law requires a written form. In this case, LSA-R.S. 10:8-319 requires the contract to be in written form. In this case, the mover, Sam Friedman, has signed no writing, in his individual capacity which could be construed as a contract to purchase the plaintiff's stock, nor has he assumed the obligation of the bank to purchase the stock, nor is the oral contract enforceable under the Statute of Frauds.

* * *
"In the Southeastern Waste Treatment case,[2] the Statute of Frauds defense was raised by motion for summary judgment and was granted. The Statute of Frauds defense is a purely legal defense and appears to be most often raised as such rather than being submitted to a jury on the merits of the oral contract. Other cases in addition to the Southeastern Waste Treatment case where the matter has been disposed of by motion before the court are as follows:

Gruen Industries, Inc. v. Biller, 608 F.2d 274, 279 (7th Cir.1979); Willowood Condominium Ass'n, Inc. v. HNC Rlty. Co., 531 F.2d 1249 (5th Cir.1976) (granted directed verdict); Riley v. Interep Associates, Inc., 533 F.Supp. 486 (N.D.Ga. 1982); Southmark Corp. v. Life Investors, Inc., 851 F.2d 763 (5th Cir.1988); Murrey v. Specialty Underwriters, Inc., 233 Ga. 804, 213 S.E.2d 668, 672 (1975) (granted motion to dismiss); Mildfelt v. Lair, 221 Kan. 557, 561 P.2d 805 (1977); Pantel v. Becker, 89 Misc.2d 239, 239, 391 N.Y.S.2d 325 (Sup.Ct. Sullivan 1977).
"This state adopted the Statute of Frauds provisions contained in LSA-R.S. 10:8-319 in an effort to harmonize the law of this state with the other 49 states. This statute promotes the transferability of securities as defined in LSA-R.S. 10:8-102 by establishing minimum requirements of certainty and reliability in connection with contracts for the sale of securities. In speaking of the purpose of the Statute of Frauds, the District Court for the Northern District of Georgia in the Southeastern Waste Treatment case pointed out the following:
The purpose of the statute of frauds, originally, was more than just to alleviate problems of proof. In part it reflected an effort to remove certain controversies from the realm of the jury. In 1677 when the English Parliament first enacted the Statute of Frauds, juries were free to disregard evidence and decide facts based on their own knowledge. The original statute stated that `no action shall be brought' which did not comply with the provisions of the Statute of Frauds. See generally, Murray on Contracts § 312 (2nd Rev. ed. 1974). The Uniform Commercial Code does not proscribe bringing an action, but rather, directs that the Court will not enforce the contract.
Regardless of the original purpose of the Statute of Frauds, or the language which governs the consequences of failure to comply, the result is the same: Absent a writing to indicate that a contract has been made, the Court will not inquire further into the existence of any agreement.
Southeastern Waste Treatment v. Chem-Nuclear Sys. 506 F.Supp. 944, 949 (District Court Northern District of Georgia, 1980)."
We agree with the Southeastern Waste Treatment court's emphasis on the Statute of Frauds as an encouragement to formalize business transactions. "When a document *1043 is signed, the line between negotiation and contract is unmistakable." 506 F.Supp. at 955.
In addition to urging the inapplicability of Section 8-319, Morris further contends the trial judge erred in failing to find Friedman personally bound by the terms of the employment contract between Morris and People's Bank. This issue was disposed of by the trial court, and affirmed by this court in our docket no. 89-1242, reported at 580 So.2d 1029 (La.App. 3d Cir.1991), concerning Friedman's exception of no cause of action for breach of the employment contract. Morris relies on deposition testimony in support of his position. Deposition testimony admitted into evidence at the summary judgment hearing cannot affect the prior ruling on the exception.
Finally, Morris argues that even given the requirements of Section 8-319, the alleged agreement by Friedman to purchase the stock is enforceable under Paragraph (d) of the statute, which allows an oral agreement to be proven by admission of the opposing party. We have reviewed the pleadings and depositions thoroughly and find no genuine issue of material fact on this issue. While it is true Friedman admits he intended to purchase Morris' stock, there is no evidence of an actual contract to purchase the stock. Friedman's representations may be sufficient to support or prove a cause of action for detrimental reliance, as we discussed in our docket number 89-1242, but do not establish the existence of a contract. Therefore, the trial judge properly granted summary judgment in Friedman's favor on this issue.
For the foregoing reasons, the trial court's summary judgment in favor of Sam J. Friedman is affirmed. Costs of this appeal are assessed to Huey P. Morris and Susie T. Morris.
AFFIRMED.
NOTES
[1] On appeal, Morris relies on Berard v. Bertrand, 567 So.2d 770 (La.App. 3d Cir.1990) and Dupuy v. Riley, 557 So.2d 703 (La.App. 4th Cir. 1990), writ denied, 563 So.2d 878 (La.1990), neither of which addresses La.R.S. 10:8-319. We decline to follow these cases, relying instead on the authority of La.C.C. arts. 9 and 1832 and the comment to La.R.S. 10:1-103.
[2] Southeastern Waste Treatment v. Chem-Nuclear Systems, 506 F.Supp. 944 (N.D.Ga 1980).