United States Court of Appeals,

Fifth Circuit.

No. 91–9505

Summary Calendar.

Marshall LEVINSON and Rick Levinson, Plaintiffs–Appellants,

v.

Jean CHARBONNET, Jr., et al., Defendants–Appellees.

Nov. 23, 1992.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REAVLEY, JONES and EMILIO M. GARZA, Circuit Judges.

REAVLEY, Circuit Judge:

In this diversity action, Marshall Levinson and Rick Levinson (the Levinsons) appeal the district court's directed verdict in favor of the estate of Jean F. Charbonnet, Jr. and Howard, Weil, Labouisse, Friedrichs, Inc. (Howard Weil). We affirm.

## I. BACKGROUND

In July 1990, the Levinsons sued Charbonnet, a stock broker at Howard Weil, for breach of contract and detrimental reliance. Seeking indemnity, Charbonnet filed a third-party complaint against Howard Weil. The Levinsons added Howard Weil as an additional defendant. Before trial, Howard Weil agreed to indemnify Charbonnet's estate, which was substituted as defendant after Charbonnet's death.

The Levinsons' lawsuit involves their purchase of 58,000 shares of Treasure Isle, Inc. stock from Charbonnet. In October 1986, the Levinsons owned 35.4% of Treasure Isle's voting stock, David R. Levinson (Bob Levinson) owned 35.1%, and Charbonnet owned or controlled 11.3% (58,000 shares). In October 1986, the Levinsons and Bob Levinson were fighting for control of Treasure Isle. On October 30, 1986, the Levinsons' attorney, Jefferey A. Melnick, called Charbonnet to see if he was interested in selling his stock to the Levinsons. The Levinsons assert that during this conversation, Melnick told Charbonnet that the Levinsons did not want to be involved in a bidding

war, that the Levinsons would only be interested in purchasing the stock if Charbonnet would agree not to negotiate with Bob Levinson, and that they would send an agent to Charbonnet's office in New Orleans the following day to consummate the sale. (The Levinsons refer to this agreement as the "oral exclusivity agreement.") The Levinsons assert that during this phone conversation, Charbonnet also agreed to sell the Levinsons his 58,000 shares of Treasure Isle stock at $18.00 per share (herein referred to as the "oral agreement to sell stock"). The next day, October 31, 1986, Arnold Levine, who was the Levinsons' agent, met with Charbonnet. During this meeting, Bob Levinson telephoned Charbonnet. Charbonnet agreed to allow Bob Levinson to bid on the 58,000 shares, and the bidding war between the Levinsons and Bob Levinson began. Charbonnet eventually agreed, in writing, to sell his stock to the Levinsons for $24.00 per share. The Levinsons assert that (1) Charbonnet breached the oral agreement to sell stock; (2) Charbonnet breached the oral exclusivity agreement; and (3) the Levinsons detrimentally relied on Charbonnet's promise to negotiate solely with them. The district court granted a directed verdict in favor of Charbonnet's estate and Howard Weil.

## II. DISCUSSION

### A. ORAL AGREEMENT TO SELL STOCK

The Levinsons contend that the district court erred in ruling that Charbonnet's oral agreement to sell 58,000 shares of Treasure Isle stock is unenforceable under Louisiana law.

La.Rev.Stat.Ann. § 10:8–319 (West Supp.1992) (hereinafter R.S. 10:8–319) provides:

A contract for the sale of securities is not enforceable by way of action or defense unless:

(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker, sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price;

(b) delivery of a certificated security or transfer instruction has been accepted, or transfer of an uncertificated security has been registered and the transferee has failed to send written objection to the issuer within ten days after the receipt of the initial transaction statement confirming the registration, or payment has been made, but the contract is enforceable under this provision only to the extent of the delivery, registration, or payment;

(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under Paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or

(d) the party against whom enforcement is sought admits in his pleading, testimony, or

otherwise in court that a contract was made for the sale of a stated quantity of described securities at a defined or stated price.

There appears to be some confusion in the Louisiana case law concerning whether R.S. 10:8–319 modifies or restricts the Louisiana Civil Code provisions that provide for the enforceability of oral agreements to buy and sell corporeal and incorporeal movables. *See* La.Civ.Code Ann. arts. 473, 1846, 2441, 2449, 2456, 2661. Since the adoption of R.S. 10:8–319 in 1978, three Louisiana courts of appeal, relying on provisions of the Louisiana Civil Code, have validated oral agreements for the sale of securities without addressing R.S. 10:8–319. *See Berard v. Bertrand,* 567 So.2d 770, 773 (La.Ct.App.3d Cir.1990); *Dupuy v. Riley,* 557 So.2d 703, 707 (La.Ct.App. 4th Cir.), *writ denied,* 563 So.2d 878 (La.1990); *Dunham v. Dunham,* 467 So.2d 555, 563 (La.Ct.App. 1st Cir.), *writs denied,* 469 So.2d 989 and 469 So.2d 990 (La.1985).[1] We cannot, with certainty, explain why those cases failed to address R.S. 10:8–319. However, because those cases failed to even mention R.S. 10:8–319, we do not believe that the courts in those cases intended to undermine the validity of R.S. 10:8–319. The only case to address R.S. 10:8–319 is *Morris v. People's Bank & Trust Co.,* 580 So.2d 1037 (La.Ct.App.3d Cir.1991). In *Morris,* the Third Circuit Court of Appeal affirmed the validity and applicability of R.S. 10:8–319 and declined to follow *Berard, Dupuy,* and *Dunham. Id.* at 1041–42 & n. 1. The *Morris* court reconciled any apparent conflicts between R.S. 10:8–319 and the Louisiana Civil Code provisions. *Id.* at 1041–42.

We believe the Louisiana Supreme Court, if presented with the instant case, would uphold the validity of R.S. 10:8–319 and apply it to the instant facts. None of the four conditions listed in R.S. 10:8–319 have been satisfied, and therefore, any oral agreement made by Charbonnet to sell his Treasure Isle stock is unenforceable.[2]

---

[1]*Berard* and *Dupuy* cite a 1965 Louisiana Supreme Court decision, *McRoberts v. Hayes,* 248 La. 676, 181 So.2d 390 (1965), for the proposition that oral agreements to transfer stock are enforceable. *McRoberts,* however, was decided 13 years before the adoption of R.S. 10:8–319.

[2]The Levinsons contend that R.S. 10:8–319 "provides just one method for selling securities, but not an exclusive means of selling securities." They contend that there are other methods of buying and selling stock that are not covered by R.S. 10:8–319. The Levinsons, however, fail to explain how and why their method of buying stock falls outside the scope of R.S. 10:8–319. In *Morris,* the court held that R.S. 10:8–319 applies to private sales of securities and to private agreements to sell securities. 580 So.2d at 1039. We find no basis for the Levinsons' argument

B. THE ORAL EXCLUSIVITY AGREEMENT

The Levinsons next contend that the district court erred in refusing to enforce the oral exclusivity agreement, which included Charbonnet's agreement not to negotiate with Bob Levinson and the Levinsons' agreement to send their agent to Charbonnet's office to buy his shares of stock. We agree with the district court that (1) this alternative theory was merely an attempt to enforce the unenforceable oral agreement to sell stock and (2) this agreement lacked mutuality of obligation. The district court characterized this agreement as nothing more than: "If you agree not to negotiate, I will agree to negotiate." The agreement lacked mutuality of obligation in that the Levinsons were not obligated to do anything. *See Simmons v. Sowela Technical Inst.,* 470 So.2d 913, 917 (La.Ct.App. 3d Cir.), *writ denied,* 475 So.2d 1109 (La.1985). An oral agreement to buy stock is unenforceable. Consequently, until a written agreement was signed, the Levinsons were not obligated to buy Charbonnet's stock. We agree with the district court that, under Louisiana law, the oral exclusivity agreement was not enforceable. *See id.; see also Sweeney v. Popeyes Famous Fried Chicken, Inc.,* 427 So.2d 464, 465–66 (La.Ct.App. 5th Cir.), *writ denied,* 435 So.2d 449 (La.1983).

C. DETRIMENTAL RELIANCE CLAIM

The Levinsons also contend that the district court erred in dismissing their detrimental reliance claim. As a separate cause of action, the Levinsons assert that they reasonably and detrimentally relied on Charbonnet's promise that he would not negotiate with Bob Levinson. *See* La.Civ.Code Ann. art. 1967. To recover for detrimental reliance, the Levinsons must prove (1) that Charbonnet made a representation, (2) that the Levinsons justifiably relied on that representation, and (3) that they changed their position to their detriments because of that reliance. *John Bailey Contractor, Inc. v. State,* 439 So.2d 1055, 1059–60 (La.1983); *South Cent. Bell Tel. Co. v. Rouse Co.,* 590 So.2d 801, 804 (La.Ct.App. 4th Cir.1991).

The Levinsons assert that they detrimentally changed their position when they rejected an offer from Bob Levinson to buy out their ownership in Treasure Isle. Prior to the October 30, 1986 telephone conversation with Charbonnet, the Levinsons received a buy-out offer from Bob Levinson.

_____

that their method of buying stock from Charbonnet is not covered by R.S. 10:8–319.

Once the Levinsons discovered they could buy Charbonnet's 58,000 shares of stock and gain control of Treasure Isle, they decided not to consider Bob Levinson's buy-out offer. At trial, Melnick, the Levinsons' attorney during the transaction, testified that once the Levinsons began negotiating with Charbonnet, their chances of negotiating a buy-out deal with Bob Levinson "materially diminished." Thus, the Levinsons' detrimental change of position can be described as a diminished opportunity to negotiate a buy-out deal with Bob Levinson.

Even if the Levinsons proved reasonable and detrimental reliance, they failed to present any proof of the amount of damages caused by their detrimental reliance. Louisiana law forbids an award of damages based on speculation. *Stokes v. Georgia–Pacific Corp.,* 894 F.2d 764, 770 (5th Cir.1990). Awarding the Levinsons damages for their diminished opportunity to negotiate a buy-out deal with Bob Levinson would involve too much speculation. Therefore, the district court properly dismissed the Levinsons' detrimental reliance claim.[3]

The remaining points of error relate to the court's rulings on evidence that would not affect the merits of the directed verdict.

AFFIRMED.

---

[3]The district court did not explain why it dismissed the Levinsons' detrimental reliance claim, but the record supports the court's action.